## CAFFAL v. HALE ET AL.

1. **Fraudulent Conveyance : EVIDENCE.** Evidence considered which was held insufficient to establish fraud in a conveyance of real estate by a son to his mother.

*Appeal from Linn District Court.*

THURSDAY, JUNE 13.

ON the 4th day of March, 1868, the plaintiff recovered a judgment in the Dubuque District Court against the defendant, Heil Hale, for the sum of three thousand four hundred and nineteen dollars. Said judgment was founded upon a promissory note executed at Memphis, Tennessee, May 7, 1864, for a stock of sutler's goods.

It is averred in the petition in this case that the defendant Heil Hale, at the date of the execution of said promissory note, was the owner in fee of one hundred and twenty acres of land in Linn county, and that on the 3d day of July, 1865, the said Hale, for the purpose of cheating and defrauding the plaintiff, and preventing him from collecting his said debt, conveyed all of said land to the defendant Mary Hale, who is his mother, and that said Mary Hale paid no consideration

for said land, and holds the same in secret trust for said Heil Hale.

It is prayed in the petition that said conveyance be cancelled and set aside, and that said land be subjected to payment of plaintiff's judgment.

The defendants filed separate answers, denying the fraud and pleading the statute of limitations. Upon a trial in the court below it was found that the conveyance of the land was fraudulent, and a decree was entered for the plaintiff, as prayed in the petition. Defendants appeal.

*Thompson & Davis*, for appellants.

*I. M. Preston & Son*, for appellee.

ROTHROCK, CH. J.—The cause is here for trial anew. We are, therefore, required to pass upon the weight of the evidence, to determine the credibility of the witnesses, where there is a conflict in the testimony, and to weigh the facts in the same manner as though this were a trial at *nisi prius*. It is not practicable in a written opinion to discuss the evidence in detail. We can, at most, give nothing more than the general conclusions at which we have arrived on questions of fact.

1. FRAUDULENT CONVEYANCE: evidence.

The cause, we think, turns upon the nature of the title held by Heil Hale to the land in controversy at the time he contracted the indebtedness to the plaintiff. In 1863 all the land in controversy was conveyed by the defendant Mary Hale and her husband, N. S. Hale, to the defendant Heil Hale, who is their son. It appears from the evidence that before this conveyance the father and mother owned the land in common, each being the owner of an undivided one-half. Their title of record is not set out in the abstract, but the witnesses state that the land was owned by them jointly. They then had a large family of children and were residing upon the land. In the spring of 1863 the son, Heil, having been in the army, came home from a rebel prison. For some

reason, which does not very clearly appear in the evidence, the father and mother united in the conveyance to the son. We think that the only reasonable theory is that the father was somewhat involved in debt. It is not disputed that Heil Hale then and afterward paid to his father quite an amount of money.

It is conceded by the defendants that some six hundred or seven hundred dollars was paid for a certain forty acres of the land, which is now said to be owned by other parties. So far as this forty acres is involved the defendants do not deny that Heil Hale purchased it, and, as between him and his father and mother, it was his land. It is claimed, however, that the remaining eighty acres were not purchased; that it was included in the deed to protect it from the debts of the father, and was to be conveyed back to the mother, and that Heil Hale never had any beneficial interest in it. After the land was conveyed back to Mary Hale her husband commenced an action against her to recover his interest therein, or for some purpose not very clearly set out in this record. On that trial Mary Hale testified that the conveyance to her son in 1863 of the eighty acres was an actual, *bona fide* transaction, made in pursuance of an actual sale of the land. But her evidence on that trial was singularly deficient. She did not pretend to have personal knowledge of the facts. In answer to the question whether it was true that "the son bought the eighty acres and paid N. S. Hale one thousand one hundred dollars for it," she said: "I suppose that he did, for he paid him off and on for years, but I have nothing for it but his word" (meaning the word of her husband). About all that her evidence showed in that case was that she joined in the deed of this eighty acres to her son. She stated then and she testifies now that she received no consideration for that conveyance. She testifies in the case at bar that when her son made the conveyance to her, when he returned from his service in the army, and which it is now sought to impeach, she did not know that he was indebted

Caffal v. Hale.

to any one. This statement is not contradicted by any witness, and whatever may be alleged against her it cannot be claimed, that she was guilty of any fraudulent intent in taking back the title to the land. Heil Hale testifies that he took the title to the eighty acres to protect it against the creditors of his father, and that he was to convey it back. The evidence shows that Heil did pay to his father quite an amount of money, more than the consideration for the forty acres. It appears that at one time he paid his father five hundred dollars. This was in March, 1867, long after the land was reconveyed to Mary Hale. This payment seems to have been made on account of some trouble between the father and mother, and to settle certain threatened divorce proceedings.

It appears from the evidence that the defendant Mary Hale, with her family, has resided on the land in controversy since before it was conveyed to her son in 1863, and that she still resides thereon.

She and her husband lived unhappily, and for the last three or four years they have not lived together. This domestic trouble has been of many years standing. They raised a family of eleven children. After the son Heil took the legal title to the land it does not appear that he went upon it to reside, nor that he ever was in possession of it, or asserted acts of ownership over it, or received anything from it either by way of rents or of the proceeds of the forty acres, which is said to have been since sold. N. S. Hale is the principal witness introduced by the plaintiff to show actual fraud upon the part of his son in conveying the land to his mother. He testifies to certain declarations of Heil Hale to the effect that he would convey the land to his mother to put it beyond the reach of the plaintiff. This evidence was material only as showing a fraudulent intent upon the part of Heil Hale. It could not affect the title of Mary Hale unless she knew of such fraudulent intent.

This witness, however, does state a most material fact in the case when he says: "I had been fretting about the deed,

Caffal v. Hale.

because he (Heil) held all the property that she and I owned," thus clearly showing that he did not then regard the transaction as a *bona fide* conveyance.

In order to maintain the issue upon his part, the plaintiff introduced the reporter's transcript of part of the evidence of Heil Hale, taken in the action between his father and mother, as original evidence, for the purpose of showing that the eighty-acre tract was actually bought and paid for by the son, and in his cross-examination in this action the attention of the witness was called to his former testimony, wherein he stated that he had bought and paid for the eighty acres. In explanation of the former testimony the witness stated that he meant to be understood that he purchased his father's interest, and was to deed it back. While it is true this evidence seems to be contradictory, and the discrepancy not very well accounted for, yet upon a consideration of all the evidence, and the situation, acts and conduct of the father, the mother and the son, which are most material considerations in this case, we cannot find that the plaintiff has shown, by a preponderance of evidence, that Heil Hale ever had any beneficial interest in the eighty acres of land. It is said that the forty-acre tract has since been conveyed to one Allsop. The record does not show that fact. The decree as to that part of the land will be allowed to stand as good between the parties to this action. As to the eighty acres the cause is

REVERSED.