## LEAKE v. ANDERSON.

1. FRAUD—CONVEYANCES—FINDINGS OF FACT by the Circuit Judge, on testimony taken by a referee and reported to the court, that certain mortgages, deeds, and confessions of judgment by a debtor were *bona fide*, in ignorance of his insolvency, and not made with intent to hinder, delay or defeat other creditors, sustained and held to be supported by the evidence.

2. IBID.—INTENT—CLERICAL ERROR.—In the sentence, "the evidence does not show that either of them had any interest to defeat, delay or hinder any other creditor," as it appears in the printed copy of the Circuit decree furnished to this court on appeal, it must be assumed that the word "interest" is a misprint for "intent," though not a matter of real difference, so far as it affects the result.

3. ASSIGNMENT FOR CREDITORS—SECURITY—PREFERENCES.—An insolvent debtor may prefer one or more creditors by mortgages, or other security, where done with the *bona fide* intent of merely securing their debts; and this court approved the finding of the court below, that such was the intention in this case, and that the several papers, though of nearly the same date, were really independent transactions, especially as some $1,800 worth of the debtor's property was not covered by his mortgages, deeds and confessions of judgment; and *held* that these transactions were not void under the assignment laws of this State.

4. IBID.—HOMESTEAD—MARSHALLING SECURITIES.—Where a debtor has mortgaged and transferred all of his property, except $1,800 worth, should his homestead exemption be deducted in estimating the amount retained for other creditors, under the two-fund doctrine applied by the courts in such cases?

5. NOTICE AT SHERIFF'S SALE—CHILLING BIDDING.—Notice given by a wife that she held a deed to land about to be sold as her husband's property, being a mere statement of what was true in fact, and disclosed by the records, is not a chilling of the bidding, and, therefore, objectionable, but, on the contrary, is to be commended.[1]

6. JUDGMENT—NON-APPEARING DEFENDANTS.—Where several transactions are assailed as parts of a scheme to defraud creditors, or to violate the assignment laws, the court, in finding that no such intent existed, may properly dismiss the complaint even as to non-appearing preferred creditors, who were made parties defendant.

Before FRASER, J., Laurens, September, 1894.

[1] See note to our own case of Herndon *v.* Gibson, 20 L. R. A., 545.—REPORTER.

Action by J. W. Leake against George B. Anderson and his preferred creditors, commenced December 28, 1893. The Circuit decree, omitting its statement of the transactions assailed (which is repeated in the opinion of this court), was as follows:

1st. It seems clear now, in the light of subsequent developments, that at the time of these transactions, whether George B. Anderson knew it or not, he was insolvent; I am satisfied, however, that all of these creditors were *bona fide*—that they had no notice of the insolvency of George B. Anderson, nor were they affected with such notice; and that the evidence does not show that either of them had any interest to defeat, delay or hinder any other creditor in the efforts to secure their own debts, which resulted in the mortgages, the deed, the confession, and purchase at sheriff's sale above referred to. I, therefore, hold that none of these transactions are void under the statute of Elizabeth.

2d. Has there been any assignment or series of transactions amounting to an assignment with preference, and, therefore, void under our statutes? In order to contravene the provisions of these sections there must be either an assignment or a series of transactions conveying substantially the whole estate of the insolvent debtor, and intended to operate as such. It appears from the testimony, a large part of which has been drawn by the plaintiff from the defendant and their counsel, there was, as estimated by them at the date of these transactions, some eighteen hundred dollars' worth of property not included by the debtor in any of these transfers. No rule has been suggested by the act or by the courts as to what in these cases constitutes substantially the whole estate.

The only paper which standing by itself could be called an assignment is the deed to Mrs. Anderson, and all the others are independent transactions, between creditors and their debtor, in which each creditor undertook to secure as best he could and in good faith, his own claims, without any reference to others. Let us assume that this deed to Mrs. Anderson was such a transfer of the whole estate as would amount to an assignment. These mortgages and the confession of judgment were made within ninety days before the execution of the deed

29—43

to Mrs. Anderson, but in order to make them void, the mortgagees and the judgment creditors must, in the language of sec. 2147, "have had reasonable cause to believe" George B. Anderson to have been at the time insolvent, and that they were made in fraud of the provisions of the assignment law. Parties may be affected with notice on account of knowledge which had at the time of the transaction come in fact to their agents or attorneys, but they cannot be affected with notice simply because in some other capacity their agents were in such a position that their principal would have been bound, even if they have failed to take notice of what they ought to have known, and in fact they did not know. A bank may be affected with notice even if its officers do not know what is on their books, but I fail to see how any outside person for whom a director may be an agent or attorney can be bound in any, unless *in fact* such agent or attorney had actual notice of the facts. I think, therefore, that none of these creditors either had notice or were affected with notice of the insolvency of Geo. B. Anderson, and that these mortgages and the judgment were not in fraud of the provisions of the assignment law.

When parties have a claim to property offered for sale by a public officer, either at an execution sale or judicial sale, it is usual to give public notice of such claims at the sale. My own judgment is, it is a proper and fair practice, and tends to prevent the unwary from being entrapped into a purchase in which there is at least a disputed title, to their great loss. Parties having conflicting claims, especially those who bring on the sale, ought to be able to protect themselves.

My conclusion, therefore, is that the transactions herein impeached are not void either under the assignment law or for fraud under the statute of Elizabeth. It is, therefore, ordered and adjudged, that the complaint be and the same is hereby dismissed.

From this decree plaintiff appealed to this court.

*Mr. N. B. Dial,* for appellant.

*Messrs. C. C. Featherstone* and *B. A. Morgan,* contra.

April 2, 1895. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiff brings this action for himself as well as all the other creditors of the defendant, Geo. B. Anderson, who will come in and contribute to the expenses of the action, for the purpose of having certain transactions between the said Geo. B. Anderson and others of his creditors, set aside. These transactions are: 1st. A mortgage to the defendant, D. R. Anderson, on certain real estate, bearing date the 13th of December, 1891, to secure the payment of a note for $1,200, given by Geo. B. Anderson to one Glenn, with said D. R. Anderson as surety. 2d. Two mortgages on certain real estate, bearing date the 24th December, 1891, given by said Geo. B. Anderson to the defendants, the Frick Co., the one to secure the payment of $1,561 and the other to secure the payment of $1,940. 3d. A deed to Mrs. H. M. Anderson, the wife of said Geo. B. Anderson, bearing date the 26th of December, 1891, for the real estate described in the above mentioned mortgages. 4th. A confession of judgment to the said O. P. Wood, whose executors are parties hereto, entered 29th of January, 1892, for about the sum of $200. 5th. A confession of judgment to the defendant, Alice C. Ferguson, entered 29th of January, 1892, for about the sum of $1,000. 6th. A purchase made by Mrs. H. M. Anderson, of the interest of the said Geo. B. Anderson in the Lime Kiln tract of land, when the same was offered for sale by the sheriff under executions against said Geo. B. Anderson, which tract of land was covered by some of the mortgages above referred to, as well as by the above mentioned deed to Mrs. Anderson.

These transactions are assailed as void for actual fraud under the statute of Elizabeth, as well as upon the ground that these transactions, taken together, amount to an assignment with preferences, in violation of the assignment law. The testimony, as taken by the referee and reported to the Circuit Court, is fully set out in the "Case," and will be referred to as occasion may require. Upon this testimony, and the argument of counsel, the case was heard by his honor, Judge Fraser, who rendered his decree (which should be incorporated in the report of the case), holding that the transactions impeached by

this action are not void, either under the assignment law or for fraud under the statute of Elizabeth, and he, therefore, rendered judgment dismissing the complaint. From this judgment plaintiff appeals upon the numerous grounds set out in the record; but they need not be specifically stated here, as the counsel for appellant, in his argument here, has classified them, as presenting the following questions: 1st. Was the defendant, George B. Anderson, insolvent at the dates of the execution of the papers sought to be set aside? 2d. Did the papers cover his entire property, or virtually all of it? 3d. Did he intend to give these favored creditors an undue preference over his other creditors? 4th. The intention of his creditors in accepting these papers? 5th. Was the property transferred or encumbered to the other creditors' detriment?

Now, while in justice to counsel for appellant we have thus stated the questions which he supposes are presented by this appeal, we are not prepared to admit that all such questions fairly arise upon this record, nor—what is more important— that they are all material to the inquiry whether there is any error in the judgment appealed from. We shall, therefore, consider the case in the light which it presents itself to our eyes, without following in their order the questions proposed. It seems to us that two general questions are presented by this appeal: 1st. Whether the transactions sought to be impeached are void under the statute of Elizabeth. 2d. If not, whether they are void under the assignment law.

The first question involves the inquiry whether there was an intent to hinder, delay or defeat the claims of the other creditors of Geo. B. Anderson. This is a question of fact, and has been solved by the finding of the Circuit Judge adversely to the contention of the appellant, and under the well settled rule, this finding of fact will be accepted by this court, unless it is without any evidence to sustain it, or is contrary to the manifest weight of the evidence. The Circuit Judge thus expresses himself upon this point: "It seems clear now, in right of subsequent developments, that at the time of these transactions, whether Geo. B. Anderson knew it or not, he was insolvent; I am satisfied, however, that all of these cre-

ditors were *bona fide;* that they had no notice of the insolvency of Geo. B. Anderson, nor were they affected with such notice; and that the evidence does not show that either of them had any *intent* to defeat, delay or hinder any other creditors in the efforts to secure their own debts, which resulted in the mortgages, the deed, the confession, and purchase at sheriff's sale above referred to. I, therefore, hold that none of these transactions are void under the statute of Elizabeth."

It is true, that in the Circuit decree as printed in the "Case" the word "intent," which we have underscored in the foregoing quotation, is printed "interest;" and one of the grounds of appeal is based upon the assumption that the word used was "interest" and not "intent;" but we must suppose that this was a misprint, for while it is manifest that the word "intent" was appropriate to the thought expressed in the passage quoted, the word "interest" would be entirely inapplicable to the idea clearly intended to be conveyed. The statute of Elizabeth does not declare a transaction void where it was to the *interest* of the parties entering into it to avoid it, but the declaration is that a transaction entered into with an *intent* to hinder, delay or defeat other creditors, shall be void. Besides, the question does not turn upon the inquiry whether it was to the *interest* of the parties to hinder, delay or defeat other creditors, but it does turn upon the inquiry whether the transaction sought to be impeached was entered into with an *intent* to hinder, delay or defeat other creditors. Indeed, we suppose it is always to the *interest* of one among several creditors of an insolvent debtor to obtain, by any lawful means, a priority over these competing creditors, and whether the means he resorts to are lawful, depends *not* upon the question whether it is his *interest* to obtain priority, but upon the question as to his *intent* in resorting to such means. So that we do not see that it makes any real difference, so far as the result is concerned, whether the word "interest" or the word "intent" was actually used; though we feel no hesitation in assuming, in justice to the Circuit Judge, that there is a misprint.

If this finding of fact can be sustained, then it is clear that

there was no error in holding that these transactions are not impeachable under the statute of Elizabeth. Without undertaking to go into any detailed examination of the testimony, it is sufficient for us to say that we think the finding of fact by the Circuit Judge is sustained by the evidence. In the first place, while, as the event proved, Geo. B. Anderson was insolvent at the time, yet there is much in the testimony tending to show that neither Geo. B. Anderson nor any of his creditors believed, *at the time*, that he was insolvent. Geo. B. Anderson himself testifies that he did not then think that he was insolvent, and his whole conduct shows that he was honestly of that opinion, for otherwise he would not have been making such strenuous exertions to get time on his debts, and thereby be enabled "to pull through," as he expressed it. Even the intelligent counsel for appellant, zealous in the protection of his clients' rights, frankly says.in his testimony that he could not say that he then regarded Anderson as insolvent. To the same effect is the testimony of other intelligent counsel actively engaged in securing the claims of other creditors whom they represented. The National Bank of Laurens seems to have discounted at least six notes, aggregating in amount the sum of $1,755, of Anderson & Boyd—the latter of whom soon afterwards made an assignment—between the 20th November, 1891, and the 28th of December, 1891; and banking institutions are apt to be well informed as to the financial condition of their customers.

There is certainly a great lack of testimony tending to show that Geo. B. Anderson was actuated by any fraudulent intention in entering into any of the transactions here assailed. Indeed, as was suggested by one of the counsel for respondents, the fact that he postponed his own wife, who held a valid claim against him, the *bona fides* of which is not assailed by any testimony, is a strong circumstance to negative any fraudulent intent on his part; for the fact that a part or the whole of this debt was subject to the bar of the statute of. limitations, is not sufficient to show that the debt was not *bona fide*, especially when it was due by a husband, possessed of large property, to his own wife. As to the other creditors, so far as we can dis-

cover, there is but little, if any, testimony even tending to show any participation on their part in any fraudulent intent to defeat or hinder other creditors.  Take the case of the defendant, Dr. Anderson, for example, we are unable to discover any shadow of testimony even tending to implicate him in any fraudulent intent.  The mortgage given him was, manifestly, a mere substitute for a previous mortgage, given him as far back as 1888, to indemnify him against any loss which he might sustain by reason of his suretyship for his brother, Geo. B. Anderson, on a debt to one Glenn, which debt Dr. Anderson was, subsequently, required to pay.  The fact that the mortgage now held by him happens to be dated on Sunday, cannot vitiate it, as was very properly admitted by counsel for appellant; but he relies upon that circumstance as an evidence that it was antedated for some fraudulent purpose.  How that circumstance affords even a ground for suspicion, we are at loss to conceive, for no reason is suggested why the mortgage should have been antedated, as no advantage, so far as we can perceive, could be derived from antedating the paper.  It seems to us easier, and much more natural, to suppose that it was just one of those mistakes in the day of the month which not unfrequently happens.

Our next inquiry is, whether these transactions are assailable under the assignment law?  Inasmuch as it is not, and cannot be pretended that there was a formal deed of assignment, this inquiry also turns upon a question of fact; for ever since the case of *Wilks* v. *Walker*, 22 S. C., 108, down to the case of *Mitchell* v. *Mitchell*, 42 S. C., 475, the last utterance upon the subject, this court has uniformly held, that while an insolvent debtor may, by a *bona fide* mortgage, which is intended merely as a security, prefer one creditor; yet if such mortgage is really designed not as a security merely but as a means of transferring his property to one or more of his creditors in preference of others, such a transaction, though not in form an assignment, comes within the mischief intended to be suppressed by the assignment law, and is, therefore, void.  The same rule applies where the debtor, instead of a single mortgage, gives a series of mortgages or enters into a series of

transactions for a similar purpose, such transactions will be regarded as violative of the spirit of the assignment law, and, therefore, void.

The doctrine is well expressed by the late Chief Justice Simpson, in the case of *Lamar* v. *Pool*, 26 S. C., at page 446, where, after discussing the subject, he uses this language: "So that in all of these cases, where the instrument assailed as contrary to section 2014 (now section 2146 of the Revised Statutes), does not in its form violate that section, having earmarks that cannot be mistaken, the question must hinge upon the intent of the parties. Is the paper a *bona fide* mortgage intended as a security, which the law allows? Or was it intended as an assignment, in which the particular creditor is preferred, the form of the paper having been adopted to evade the act? This question in such a case becomes a question of fact, and such is the case now before the court." So in *Meinhard* v. *Strickland*, 29 S. C., at page 496, where this matter was under discussion, we find the following language: "It is plain, then, that in cases of this kind, the question is mainly one of fact as to the intention of the parties. If the instruments employed were *bona fide* intended merely as security and not as a means of evading the provisions of the assignment act, then they do not fall within the purview of that act. But if, on the contrary, the instruments resorted to, *whatever may be their form*, were intended not merely as security but as a means of transferring the debtor's property to the favored creditor, to the exclusion of others, with a view to evade the provisions of the assignment act, then they must be regarded as null and void under the provisions of that act. Without multiplying quotations, we think it may be safely asserted that the same doctrine pervades all of the cases upon the subject.

Now it is quite clear that there is no finding of fact that the several transactions here assailed were entered into for the purpose of evading the provisions of the assignment law, and we think it equally clear that the testimony would not warrant any such finding of fact. We agree with the Circuit Judge that these transactions were separate and independent transactions, having no connection with each other, and were not

in pursuance of a common purpose to transfer all, or substantially all, of the debtor's property to some of his creditors, to the exclusion of the others. The mortgage to Dr. Anderson was given in pursuance of an arrangement entered into about three years previously, to secure an honest liability. The mortgages to the Frick Co. were obtained by the counsel of that company by an arrangement for an extension of time on the debts due them, which does not look much like an assignment was intended. The deed to Mrs. Anderson for what is usually termed the equity of redemption in the mortgaged premises was given in satisfaction of an honest debt of long standing, and was practically the same thing as if George B. Anderson had sold his equity of redemption in those premises to a third person for cash, and applied the same to the payment of his honest indebtedness to his wife, as he unquestionably would have had the right to do. And the confessions of judgment to Wood and to Mrs. Ferguson were given to save costs on debts *bona fide* due to them.

Besides, the Circuit Judge has found that the mortgages, deed, and confessions of judgment here assailed did not cover the whole, or practically the whole, of George B. Anderson's property, but that property to the amount of about $1,800 was not included therein, an amount apparently more than sufficient to pay plaintiff's judgment, and we do not hear of any other creditors uniting in these proceedings. It is true, that appellant insists that after deducting Geo. B. Anderson's homestead exemption the amount would not be so large, still the excess would be considerable. But this matter of the homestead does not seem to have been presented to or decided by the Circuit Judge, and is not, therefore, properly before us. But even if it were, it is more than questionable whether it could have any effect upon our conclusion, under the case of *Savings Bank* v. *Harbin*, 18 S. C., 425, if for no other reason.

We have not deemed it necessary to discusss any of the exceptions to the competency of the testimony, as that matter was not pressed in the argument here. Besides, we may add that we think the testimony, at least the most of it, was com-

petent, and whether it was relevant or not, was a matter within the discretion of the Circuit Judge. But as we think that even if all the testimony objected to were ruled out, quite enough would remain to sustain the views which we have adopted, it is unnecessary to discuss the question of the competency of the evidence objected to.

The objection to the purchase at the sheriff's sale of the Lime Kiln tract of land by Mrs. Anderson, which seems to be a distinct and separate matter, based upon the ground that she, by giving notice at the sale that she held a deed for that land, chilled the bidding, is untenable. So far as we can discover, she did no more than what is often done, and properly done—gave notice at the sale that she held a title for that land, which was true. Indeed, she did no more than give actual notice of a fact, of which the public had already constructive notice by reason of the fact that her deed had been duly recorded. This, so far from being objectionable, was rather commendable, as it tended to prevent an unwary bidder from "buying a lawsuit."

Finally, it is contended that the Circuit Judge erred in not setting aside the judgment of Wood and Mrs. Ferguson, as they had not answered the complaint. It is true, that the Circuit Judge does not, in his decree, make any ruling as to these judgments specifically. This was, probably, because he took the view that these judgments were not assailed upon the ground of fraud or want of consideration in either of them, but solely because, it was alleged, they were parts of the same general transaction, entered into for the purpose of evading the assignment law, and hence must stand or fall with such general transaction, and as the attack upon such transaction failed, there was no ground shown which would warrant the setting aside of those judgments.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.