Carey, Respondent, vs. Dyer, Appellant.

*October 28 — November 16, 1897.*

*Fraudulent conveyances: Seal evidence of consideration: Damages: Attachment.*

1. A seal upon a bill of sale of goods is presumptive evidence of a sufficient consideration.

2. Even though one creditor of an insolvent takes a bill of sale of goods as mere additional security for debts previously secured by chattel

mortgage, an attachment of those goods by another creditor cannot be justified without showing that those debts have been paid, or that such bill was given with the intent to hinder, delay, or defraud other creditors, and that the vendee participated in such intent.

3. Even though a creditor knows, at the time, that his debtor is also indebted to others, he is not thereby precluded from getting in good faith security for the amount due to himself, nor from accepting property from his debtor, at a fair valuation in satisfaction of a portion of such indebtedness.

4. The amount which goods, which had been wrongfully attached, brought at a forced sale is by no means conclusive as to the damages for such attachment.

APPEAL from a judgment of the circuit court for Grant county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

This action was commenced June 6, 1896, for unlawfully taking from the possession of the plaintiff the goods and chattels described, of which the plaintiff was then, and for a long time prior thereto had been, the owner and in the rightful possession, of the value of $814.29, and converting the same to his own use, to the plaintiff's damage in the sum named, and also for unlawfully taking from the possession of the plaintiff certain other goods and chattels described, of which goods the plaintiff was then, and for a long time prior thereto had been, the owner and in the rightful possession, of the value of $106.69, and converting the same to his own use, to the plaintiff's damage in the sum last named; for which the plaintiff demands judgment for $920.98 damages and costs. The answer consists of admissions and denials, and justifies the taking and conversion as sheriff, under and by virtue of a writ of attachment issued out of the circuit court for Grant county, June 3, 1896, in favor of Carson, Pirie, Scott & Co., and against one F. L. Greer, of Bloomington, in that county, and in which action judgment was rendered in favor of Carson, Pirie, Scott & Co., and against Greer, for $311.68, with interest and costs; and alleges that the goods and chattels so converted were the

property of said Greer, and had been moved from his store in Bloomington to his store in Lancaster, where they were so seized by the sheriff; that upon said judgment execution was duly issued, and said goods so attached duly levied upon and sold thereunder; that any pretended transfer of the goods and chattels from Greer to the plaintiff herein was made without a valuable and sufficient consideration, but with the intent, on the part of both parties thereto, to hinder, delay, and defraud the creditors of Greer, of whom the firm of Carson, Pirie, Scott & Co. was one for the amount stated.

A jury having been waived, the cause was tried by the court, and at the close of the trial the court found, as matters of fact, in effect, that the allegations in the complaint were sustained by the evidence, and true; that at the time of such seizures, respectively, the plaintiff was the owner and in the lawful possession of the goods and chattels, and the whole thereof, at Lancaster; that said goods and chattels were, for a valuable consideration, sold and delivered by Greer to the plaintiff, May 25, 1896; that the value of the same was $740; that such goods and chattels were so taken by the defendant, as such sheriff, on the attachment mentioned, as the property of Greer, and that the same were sold by the defendant, as such sheriff, upon an execution issued upon said judgment; that at the time of such seizures said goods and chattels were not in the possession of Greer, but were the property and in the lawful possession of this plaintiff, to whom they had been, May 25, 1896, duly sold and conveyed by Greer for a valuable consideration, and without an intent to hinder, delay, or defraud the creditors of Greer. And as conclusions of law the court found, in effect, that the plaintiff was entitled to recover of the defendant the value of the goods and chattels so taken and sold by him, to wit, $740, together with costs and disbursements of this action, and ordered judgment thereon accordingly.

From the judgment so entered the defendant brings this appeal.

For the appellant there was a brief by *Bushnell, Watkins & Moses,* and oral argument by *R. A. Watkins* and *A. R. Bushnell.* They argued, among other things, that the bill of sale held by the plaintiff was void for want of consideration. The property was not turned over as an absolute payment of the debt, nor was time for payment extended. Wait, Fraud. Conv. § 223; *Oliver v. Moore,* 23 Ohio St. 479; *Starr v. Starr,* 1 Ohio (2d ed.), 149. If the bill of sale was a mere additional security for the debt secured by the chattel mortgage, its execution was only a part of the same transaction as the giving of the mortgage, and the plaintiff's interest in the goods was only that of a mortgagee in possession. The measure of his damages is the amount of his claim. 3 Sutherland, Damages, 525; *Tenney v. State Bank,* 20 Wis. 152; *Ward v. Henry,* 15 id. 239; *Parish v. Wheeler,* 22 N. Y. 494, 511; *Stevens v. Breen,* 75 Wis. 595. If he has enough left to pay his debt, that is a good defense to the action. *Ward v. Henry,* 19 Wis. 76. The transaction by which the plaintiff obtained the goods was void, either as being fraudulent, or as being an assignment for the benefit of creditors with preferences and not made as required by statute. *Breslauer v. Geilfuss,* 65 Wis. 377; *Kuykendall v. McDonald,* 15 Mo. 416; *Northern Nat. Bank v. Weed,* 86 Wis. 212; *Maxwell v. Simonton,* 81 id. 635; *Fuller & Fuller Co. v. McHenry,* 83 id. 573; *Strong v. Kalk,* 91 id. 29; R. S. ch. 80; S. & B. Ann. Stats. sec. 1693*a.*

For the respondent there was a brief by *Lowry & Clementson,* and oral argument by *E. M. Lowry.*

CASSODAY, C. J. It is undisputed that for many years prior to May 25, 1896, F. L. Greer had been running a general store at Bloomington, where he resided. That the value of that stock at that time was about $15,000. That for over

Carey vs. Dyer.

a year he had also owned a stock of goods at Lancaster, in the same county, which had, during that time, been conducted by his brother-in-law, James McGonigal, and wife; that the value of that stock of goods at that time, as per inventory then taken, was $2,040. That the plaintiff is a farmer, and the brother-in-law of Greer, and had been in the habit for many years — commencing as far back as 1880 — of aiding Greer in his business by loaning money to or advancing money for him, signing or indorsing his paper, and in other ways, so that on May 25, 1896, Greer was indebted to the plaintiff, or the plaintiff had become liable to pay Greer's debts to others, as follows: The plaintiff signed a note with Greer to Pike for $1,000; he had also signed a note with Greer to Woodhouse and Bartley (bankers) for $2,000; he also gave, on that day, his note for $3,269.50 to Woodhouse and Bartley, to balance Greer's account at their bank. That Greer was at the same time indebted to the plaintiff on an open book account to the amount of $7,565.02, including $1,915 which the plaintiff had borrowed of his uncle for the use and benefit of Greer,— thus making an aggregate amount of indebtedness and liability of $13,834.52. May 25, 1896, Greer gave to the plaintiff a chattel mortgage on his stock of merchandise and store fixtures at Bloomington, reciting a consideration of one dollar, and conditioned upon the payment by Greer of the several debts and liabilities mentioned. That upon the back of that mortgage was indorsed the written consent of Greer that the plaintiff, as such mortgagee, might take immediate possession of the stock of goods and fixtures therein mentioned, and sell the same at public or private sale without notice, in his discretion. That such mortgage, with such indorsement, was filed in the office of the town clerk of the town of Bloomington, May 25, 1896, at 2 p. m. That the plaintiff did immediately and upon the same day take possession of the goods and fixtures described in the mortgage. That afterwards and on

the same day, Greer executed and delivered to the plaintiff an absolute bill of sale of all his goods, wares, merchandise, and fixtures in Lancaster for and in consideration of $2,000 paid by the plaintiff to Greer, as therein recited. That the bill of sale stated that the property thereby transferred was in a building then owned by McDonald. That Greer thereby assigned to the plaintiff the lease of such store building under and by virtue of which he held the same. And that upon the next day — May 26, 1896 — the plaintiff took possession of the Lancaster stock and fixtures so conveyed by the bill of sale, and placed James McGonigal in charge thereof as his agent. A copy of that bill of sale was filed in the office of the town clerk of the town of Bloomington.

There is evidence to the effect that the plaintiff received such bill of sale, and so took possession thereunder in satisfaction of $2,000 of Greer's indebtedness to him. The real question here involved is as to whether the plaintiff was entitled to the property covered by the bill of sale as against the seizures of the same by the defendant, as sheriff, on the attachment, June 4 and 18, 1896. It is claimed that the bill of sale was void, as against the attachment, on several grounds.

1. It is contended that it was void for want of consideration. The bill of sale is under seal. A seal even upon an executory instrument is presumptive evidence of a sufficient consideration. R. S. sec. 4195; *Warder v. Baker*, 54 Wis. 62. The bill of sale was taken after the execution of the mortgage, but on the same day; and the plaintiff had, on that day, assumed new liabilities in behalf of Greer for an amount exceeding the $2,000; and according to evidence on the part of the plaintiff, the bill of sale was accepted as $2,000 then paid. We have no doubt the bill of sale was made upon a good consideration. There is plenty of evidence to support the finding to the effect that the sale was absolute, and for a valuable consideration. *Shufeldt v.*

*Pease,* 16 Wis. 659; *Bange v. Flint,* 25 Wis. 544; *Henry v. Vliet,* 33 Neb. 130.

2. Even if the bill of sale had been taken as mere additional security for the debts and liabilities mentioned in the chattel mortgage, as contended by counsel, yet that would not have justified the taking of the property from the possession of the plaintiff on the attachment, without showing that such debts and liabilities had been paid or discharged, or that the same was given with the intent to hinder, delay, or defraud other creditors of Greer, and that the plaintiff participated in such intent. There is no pretense that the debts and liabilities mentioned in the mortgage have been fully paid or discharged.

3. It is true that at the time of giving the mortgage and bill of sale Greer was indebted to other parties, and over and above the debts and liabilities mentioned in the mortgage, to the extent of about $6,000. The plaintiff testified, in effect, that at the time of executing the chattel mortgage and bill of sale he did not know that there were claims in favor of any such other creditors for collection against Greer at the Bloomington Bank or elsewhere, or that Greer owed any other debts than those mentioned in the chattel mortgage; that he did not have any reason to suppose that he owed debts for goods in the store; that he then had no reason to believe there was any such claim; and that he had heard nothing of the kind until questioned in this action. Greer testified to the effect that his purpose in executing the chattel mortgage and bill of sale was to secure his indebtedness to the plaintiff, and that he had no other object in doing so. But, even had the plaintiff, at the time, known of such other indebtedness, yet he was not thereby precluded from getting in good faith security for the amount of Greer's indebtedness and liability to him, nor of accepting from Greer property at a fair valuation in satisfaction of a portion of such indebtedness. *Bleiler v. Moore,* 94 Wis. 385;

*Koch v. Peters, ante,* p. 492. The value of the property covered by the bill of sale was, as ascertained from an inventory taken, only $40 in excess of the consideration named in the bill of sale. We are constrained to hold that the finding to the effect that the property covered by the bill of sale was, May 25, 1896, duly sold and conveyed to the plaintiff for a valuable consideration, and without any intent to hinder, delay, or defraud the creditors of Greer, is sustained by the evidence.

4. The contention of counsel that the transaction brings the case within the principles of *Winner v. Hoyt,* 66 Wis. 227, and other similar cases in this court, is without foundation. The mortgage and bill of sale were taken by the plaintiff for his own benefit, and not in trust for any other creditor. The case comes, therefore, within the principles of *Cribb v. Hibbard, Spencer, Bartlett & Co.* 77 Wis. 199; *Michelstetter v. Weiner,* 82 Wis. 298; and other similar cases in this court.

5. The damages found by the court are not too large, but are sustained by the evidence. The mere fact that they brought less at forced sale is by no means conclusive.

*By the Court.*— The judgment of the circuit court is affirmed.