(81 N. W. Rep. 70.)

---

## CARRIE E. LOCKREN *vs.* HELGE O. RUSTAN.

Opinion filed November 6, 1899.

**Voluntary Transfer in Fraud of Creditors—Trusts.**

Where the owner of real estate conveys the same to another party with intent to hinder, delay, or defraud his creditors, and for no consideration except the promise of such party to reconvey to the grantor on request, the transaction creates no trust relation between the parties thereto. Such fraudulent grantee may retain the legal and equitable title to the property as against all the world ·except the creditors of the grantor.

**Moral Consideration will Support Transfer.**

But, under such circumstances,' a moral obligation of a high character rests upon the grantee to reconvey upon the request of the grantor, and such moral obligation furnishes a sufficient consideration to support such a reconveyance.

**When Reconveyance will be Sustained.**

Such property, while in the hands of the grantee, would be subject to the claims of 'his creditors. But where no credit was given on the strength of the apparent ownership of such grantee, and where a reconveyance was made before any claims against the fraudulent grantee attached as liens upon the land, such reconveyance will be upheld as against the creditors of such fraudulent grantee.

**Knowledge in Grantee of Fraudulent Purpose.**

The fact that the original owner knew that the reconveyance was made by his fraudulent grantee with· the intent, upon 'his part, to hinder, delay, or defraud his creditors, will not taint the transfer, where such original owner requested the same in order to protect and preserve his property.

Appeal from District Court, Walsh County; *Fisk,* J.

Action by Carrie E. Lockren against Helge O. Rustan and others. Judgment for defendants, and plaintiff appeals.

Affirmed.

*H. A. Libby,* for appellant.

*Cochrane & Corliss* and *Swiggum & Myers,* for respondents.

BARTHOLOMEW, C. J. This action was brought to set aside deeds to a half section of land lying in Walsh county, and another half section lying in Cavalier county, which deeds were executed by the defendant Helge O. Rustan to the defendant Ole Helgeson Rustan, and also deeds of the same lands executed at the same time by Ole

Helgeson Rustan to Finger O. Rustan. The plaintiff is a creditor of Helge O. Rustan, and she claims that the said deeds were given and received in fraud of her rights as such creditor, and in further-ance of a conspiracy on the part of defendants to hinder, delay, and defraud her in the collection of her said debt. All the allegations of fraud and conspiracy in the complaint were denied by the answer. At the trial the defendants prevailed, and the case comes into this court upon plaintiff's appeal for trial anew.

The difficult questions are questions of law. The testimony is not very voluminous, and there are but few contradictions in it, and these are on minor points. The facts, as admitted by the pleadings or fairly established by the evidence, may be stated as follows: In December, 1895, plaintiff commenced an action against Helge O. Rustan to recover damages for breach of promise of marriage. In June, 1896, the case was tried, and a verdict returned for plaintiff for over $3,000. Immediately upon the coming in of the verdict, and on motion of the defendant in that case, a stay of proceedings for 90 days was entered. At that time, and for some years prior thereto, the record title of all the lands above mentioned was and had been in Helge O. Rustan. During the continuance of the stay, and on August 20, 1896, the transfers above mentioned were made. On October 2, 1896, judgment was entered on the verdict. Very soon thereafter execution issued on the judgment, and was returned *nulla bona.* An alias execution was issued, and levied upon this land as the land of the judgment debtor, Helge O. Rustan, and thereafter this action was brought in aid of such execution.

The family of the defendant Ole Helgeson Rustan consists of a wife and eleven children, and among the children are the defend-ants Helge O. and Finger O. Rustan. In 1881, Ole Helgeson Rustan, with his family, removed from the State of Minnesota to Walsh county, in this state, and he acquired the title to the Walsh county lands here in dispute under the government land laws. While resident in Minnesota he contracted quite a large indebtedness, which remained unpaid when he settled in Walsh county. He received a receiver's final receipt for 160 acres of said land on December 20, 1881, and very soon thereafter he and his wife joined in a convey-ance of said land by warranty deed to one M. Raumin. Said deed was made without any consideration whatever, but with the under-standing that the said Raumin should convey said land to Helge O. Rustan, the son of Ole Helgeson Rustan, and the same was so con-veyed a few days thereafter by warranty deed. Helge O. Rustan was at that time a lad about 13 years of age. On August 10, 1883, Ole Helgeson Rustan received the final receiver's receipt upon the other quarter section of land in Walsh county, and very soon thereafter he joined with his wife in a conveyance of the same to his brother-in-law, one Mylie. This conveyance was also without consideration, but made with the understanding that the said land should be con-veyed to said Helge O. Rustan, and it was so conveyed in 1887. The avowed object of Ole Helgeson Rustan in thus placing the title to

the land in his son was, as he expresses it, "to get protection until he could pay his debts." The law would say, upon this admission, that his object was to hinder, delay, or defraud his creditors, and we will so treat it.

The Rustan family continued to reside upon said land. Ole Helgeson Rustan, the father, treated the land in all respects as if it were his own. He paid all expenses incurred in improving and cultivating the same, and received all the produce therefrom. Helge O. Rustan did not know that the title to the land was in his name until about 1890, as the testimony shows. He had executed mortgages upon some of the land, but had signed the papers at the direction of his father, without understanding what they were. But about 1890 the matter· was talked over and explained, and the father told him that the land must be deeded back whenever he (the father) desired it, to which the son fully assented. In 1892 the father purchased the land in Cavalier county, paying the full purchase price himself, but had the title transferred to his son Helge, for the same fraudulent purpose that induced him to have the title to the Walsh county land placed in his son. This the son well understood at the time, and promised to convey it to the father whenever by him so requested. Such was the condition of the title and the relative rights of the parties on. August 20, 1896, when the son,—he says at the request of his father,—without any money consideration whatever, conveyed all the land to his father. It should be stated that prior to this time, and prior to the bringing of the breach of promise action, Ole Helgeson Rustan had settled all his old debts, and owed nothing except what was secured. Under this state of facts, was the conveyance from son to father in fraud of the rights of the plaintiff?

It must be conceded that no such conveyance could have been enforced. There was no trust relation between these parties, either by contract or as a resulting trust or *ex maleficio*. Where a trust exists, it can be enforced in equity. The son held the full legal title, and he held the equitable title, as against all the world except the creditors of the father. They, so far as we know, never at any time sought to disturb the title of the son. The land in the hands of the son was subject to his debts. Had a creditor of his obtained judgment against him while the title stood in his name, the judgment would have been a lien upon the land, and no transfer to the father could have affected the lien. To that extent the grantee, in a conveyance made to hinder, delay, or defraud creditors, is the owner of the land. But, as to strangers to the conveyance, the property rights of the fraudulent grantor in the subject of the grant are superior to the property rights of the fraudulent grantee. In other words. in a contest between the creditors of the grantor and the creditors of the grantee, the former will succeed. *Bank* v. *Lyle*, 7 Lea, 431; *Clark* v. *Rucker*, 7 B. Mon. 583. This shows that the property rights of the vendor have not been extinguished. But the law, for reasons of public policy and to discourage fraudulent con-

veyances, will not permit him to assert them. If, then, these property rights exist; if the grantor purchased and paid for the property, and has never received anything therefor from the grantee; if the only right or equity that the grantee has in the property is his right to claim the protection of a technical rule of law that will not permit him to be attacked, not by reason of any rights in him, but solely on the ground of public policy,—it must follow that, in good conscience and morals, the grantee ought to reconvey to the grantor, if the latter so request. In Wait, Fraud. Conv. § 398, it is said: "Though a reconveyance cannot be enforced, the fraudulent vendee is said, in some of the cases, to be under a high moral and equitable obligation to restore the property. The law is not so unjust as to deny to men the right, while it is in their power to do so, to recognize and fulfill their obligations of honor and good faith; and, until the creditors of the vendee acquire actual liens upon the property, they have no legal or equitable claims in respect to it higher than or superior to those of the grantor." See, also, *Biccochi* v. *Casey-Swasey Co.* (Tex. Sup.) 42 S. W. Rep. 963; *Davis* v. *Graves*, 29 Barb. 480; *Dunn* v. *Whalen* (Sup.) 21 N. Y. Supp. 869; *Moore* v. *Livingston*, 14 How. Prac. 1; *Starr* v. *Wright*, 20 Ohio St. 107; *White* v. *Brocaw*, 14 Ohio St. 341; *Bank* v. *Brady*, 96 Ind. 509; *Sabin* v. *Anderson* (Or.) 49 Pac. Rep. 872. There being, then, a moral obligation of the highest type resting upon the son to convey to the father, the discharge of that obligation furnishes ample consideration for such conveyance, and the conveyance, if received in good faith, works no legal fraud upon any party whose rights to the property conveyed are not in law superior to the rights of the father.

How stood the relative rights of this plaintiff and the father? It must be remembered that no principle of estoppel is present in this case. Plaintiff did not extend credit to Helge O. Rustan on the strength of his apparent ownership of the property. Her claim is based upon a tort. No credit was ever extended. It has been held, however, that the grantee's creditors could obtain no rights by way of estoppel superior to those of the fraudulent grantor. See *Biccochi* v. *Casey-Swasey Co.*, supra, and cases cited. The efficiency of a moral obligation to uphold a transfer, as against creditors, has frequently been asserted by courts, where property has been transferred in satisfaction of a debt barred by the statute of limitations, or from which the party had been discharged in bankruptcy, or other like circumstances, where only the moral obligation to pay remained. *French* v. *Motley*, 63 Me. 326; *Bank* v. *Kimble*, 76 Ind. 195; *Livermore* v. *Northrup*, 44 N. Y. 107; *McConnell* v. *Barber* (Sup.) 33 N. Y. Supp. 480; *Keen* v. *Kleckner*, 42 Pa. St. 529; *Leake* v. *Anderson* (S. C.) 21 S. E. Rep. 439; *Pierce* v. *Wimberly* (Tex. Sup.) 14 S. W. Rep. 454. It has also been directly held that the claims of the creditors of the fraudulent grantee, before reduced to judgment, or in some manner fastened as a lien upon the property, are not superior to the claim of the

fraudulent grantor to have property reconveyed to him. *Davis* v. *Graves,* 29 Barb. 480; *Powell* v. *Ivey,* 88 N. C. 256; *Clark's Adm'r* v. *Rucker,* 7 B. Mon. 583; *Biccochi* v. *Casey-Swasey Co.* (Tex. Sup.) 42 S. W. Rep. 963; *Caffal* v. *Hale,* 49 Iowa 53; *Lillis* v. *Gallagher,* 39 N. J. Eq. 94; *Matthews* v. *Buck,* 43 Me. 265; *Association* v. *Roll,* 137 Ill. 205, 27 N. E. Rep. 184. These well-settled propositions force the conclusion in this case that the conveyance from Helge O. Rustan to Ole Helgeson Rustan was based upon a sufficient consideration, and that it must be upheld as against the claims of the creditors of Helge O. Rustan, whose claims had not been reduced to liens upon the property, unless such conveyance was made and received with intent to hinder, delay, or defraud the creditors of Helge O. Rustan.

In reaching a proper conclusion upon this point, several considerations must be kept in mind. So far as this record shows, Helge O. Rustan had no creditors aside from this plaintiff, who had a claim for damages for tort that had reached the stage of a verdict, but not of a judgment. As we have seen, her inherent equities were in no manner superior to those of Ole Helgeson Rustan. Again, he had a large family to support, and no means of support, or, more accurately, but very limited means of support, aside from the land, all of which stood in the name of Helge O. Rustan, who had no real ownership thereof or interest therein. On the other hand, it is perfectly apparent from this record that the Rustans, father and son, believed the claim of plaintiff to be unfounded and unjust, and they were bitterly opposed to permitting her to realize anything thereon. The intention of the parties must be gathered largely from the surroundings. The direct evidence is not very satisfactory. The son testifies that he executed the conveyance because his father requested him so to do. He denies emphatically that there was ever any conversation between the parties to the conveyance or any understanding that the transfer should be made to hinder or defeat a recovery by plaintiff on her claim, and upon this point the testimony of the father is practically the same. But if Helge O. Rustan had been the absolute owner of the land, and had sold it to his father for full consideration, or had transferred it to him in satisfaction of a debt owing by him to the father, we think, under the circumstances, the conclusion would be warranted, if not irrestible, that his object was to hinder and delay the plaintiff in the collection of her claim, and we hold that such was his purpose and intent.

But that intent upon his part alone, even if known to his grantee, may not be sufficient to invalidate the deed. As we have seen, there was a consideration for the conveyance. But that is not sufficient. It has been held many times that, where the grantee participated in the fraudulent intent, the fact that he paid full consideration would not save the conveyance when attacked by creditors of the grantor. See Wait, Fraud. Conv. (3d Ed.) § 201. But this rule in its entirety applies only to cases of purchase for a present

consideration, and in such cases it is held that, where the grantee purchases with knowledge of the fraudulent intent on the part of his grantor, that fact alone fixes his participation in the fraud. *Greenleve* v. *Blum*, 59 Tex. 127; Wait, Fraud. Conv. (3d Ed.) § 199. But a different rule prevails where the conveyance is made in satisfaction of a pre-existing indebtedness. There the effect of the transaction is to prefer one creditor to another, and that a debtor has a right to do unless restrained by statute. If the creditor receives only so much property as is reasonably necessary to satisfy his debt, and receives it in good faith for that purpose, the fact that he may know that his grantor is actuated solely by a desire to defraud his other creditors will in no manner taint the transaction. *Paulson* v. *Ward*, 4 N. D. 106, 58 N. W. Rep. 792; *Cooper* v. *Bank*, (Ala.) 11 South. Rep. 760; *Nadal* v. *Britton* (N. C.) 16 S. E. Rep. 914; *Young* v. *Clapp* (Ill. Sup.) 32 N. E. Rep. 187; *Bannister* v. *Phelps*, 81 Wis. 256, 51 N. W. Rep. 417; *Coal Co.* v. *Burnham* (Neb.) 72 N. W. Rep. 487; *Koch* v. *Peters*, 97 Wis. 492, 73 N. W. Rep. 25; *Carey* v. *Dyer*, 97 Wis. 554, 73 N. W. Rep. 29; *Claflin Co.* v. *Grashorn*, 99 Wis. 357, 74 N. W. Rep. 783; *Mapes* v. *Burnes*,. 72 Mo. App. 411. The reasons that have been assigned for the distinction between one who purchases for a present consideration and one who purchased in satisfaction of a pre-existing debt are sound and unassailable. The former is in every sense a volunteer. He has nothing at stake,—no self-interests to serve. He may, with perfect safety, keep out of the transaction. Having no motive of interest prompting him to enter it, if yet he does enter it, knowing the fraudulent purpose of the grantor, the law, very properly, says that he enters it for the purpose of aiding that fraudulent purpose. Not so with him who takes the property in satisfaction of a pre-existing indebtedness. He has an interest to serve. He can keep out of the transaction only at the risk of losing his claim. The law throws upon him no duty of protecting other creditors. He has the same right to accept a voluntary preference that he has to obtain a preference by superior diligence. He may know the fraudulent purpose of the grantor, but the law sees that he has a purpose of his own to serve, and, if he go no further than is necessary to serve that purpose, the law will not charge him with fraud by reason of such knowledge.

In the case at bar it is too plain for suggestion that Ole Helgeson Rustan, in receiving the conveyance from his son, occupied the position of one who received the conveyance in extinguishment of a pre-existing obligation. He had the highest motive of self-interest to serve. If he did not obtain the deed to this land, circumstances might, and probably would, make it forever impossible for the son to fulfill his obligation to his father. True, he knew that, by receiving satisfaction of this obligation, he necessarily postponed the claim of plaintiff. But he was under no obligation, legal or moral, to protect her rights. Indeed, in some respects, his equities are greater than those of an ordinary creditor who receives

a conveyance. Generally, the grantor cancels his obligation by transferring his own property in satisfaction thereof. Here the grantor canceled his obligation by transferring to the grantee what was in morals, but not in law, the grantee's own property. We are clear that no fraud can be charged to this grantee, unless the evidence and circumstances establish the fact that he took the conveyance, not to save his property, but to hinder, delay, or defraud plaintiff. We do not think that is the case. True, the ever-present thought that he regarded plaintiff's claim as unjust, and was bitterly opposed to permitting her to receive anything thereon, makes it difficult to draw the distinction. The grantee testifies that he told his son that he wanted the land back, and requested him to make the deed; that he knew his son was getting into trouble by reason of plaintiff's claim, and he feared that, if the land was left in the son's name, the plaintiff might get hold of it; that she might get a judgment that would be a lien upon it. He categorically denies that his object in taking the conveyance was to hinder or defraud plaintiff, and this, we think, is substantially true, notwithstanding his aversion to her recovering anything. The desire that he may have had that his son should not pay this claim must, in the nature of things, have been entirely subordinate to his desire that the son should not pay the debt with his (the father's) property. His interest in protecting and preserving his own property must have been immeasurably greater than any interest he could have in defrauding plaintiff. We are bound to believe that he was influenced by the stronger, and not by the weaker, motive, particularly when all the direct evidence so declares. And, indeed, in protecting and preserving his own property, he could not defraud plaintiff, because she could have no claim upon his property. But it is urged that it is certain that he did not take the property back because he wished to preserve if for himself, for the reason that he immediately conveyed it to another son, and the trial court found that this transfer was without consideration. We do not deem this latter point of importance. It is clear to us that in deeding the property to another son he acted *ex abundanti cautela,* and in the mistaken belief that he was thus placing another barrier between his property and the danger that menaced it. We find nothing in the record that requires a reversal. We adopt the judgment and decree of the trial court, which are in all things affirmed. All concur.