SUMMERS v. GLENWOOD GOLD & SILVER MINING CO, *et al.*

1.  Comp. Laws, § 2930, requires the meetings of stockholders and board of directors of a corporation to be held at its principal office. The by-laws of a mining corporation provided that special meetings of the board of directors could be held only on two days' notice to each member of the board. A deed of the corporation, conveying all its corporate property, was executed at a special meeting at a branch office, of which no notice was given, and three of the four directors executing it were also directors of the corporate grantee. *Held*, that the deed was void.

2.  Where a conveyance of property from one corporation to another was void, and the obligation on which plaintiff subsequently obtained a judgment against the grantee accrued prior to the conveyance, a reconveyance of the property to the grantor was not fraudulent as to plaintiff.

3.  Where one corporation conveyed property to another in consideration of an issue of stock of the latter, and the property was reconveyed to the grantor, and a judgment creditor of the grantee sought to set aside the reconveyance as fraudulent, and the grantor claimed that the first conveyance was void because the stock issued therefor was worthless, a judgment obtained by a stranger against the grantee prior to the reconveyance was admissible to show the financial condition of the grantee at that time.

(Opinion filed June 12, 1901.)

Appeal from circuit court, Lawrence county. Hon. Joseph B. Moore, Judge.

Action by James F. Summers against the Glenwood Gold and Silver Mining Company and another to vacate and set aside a transfer of realty. From a judgment in favor of defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

*Martin & Mason,* for appellant.

*Moody, Kellar & Moody,* for respondents.

Fuller P. J. On the ground that a conveyance of certain mining property to the Glenwood Gold and Silver Mining Company by the Welcome Mining and Smelting Company is fraudulent as to plaintiff, a judgment creditor of the latter, he brought this action to vacate and set aside such transfer, and now appeals from a judgment in favor of the defendants, and from an order overruling a motion for a new trial.

It appears from the evidence and the court found, that on the 20th day of January, 1893, certain officers of the respondent Glenwood Gold and Silver Mining Company executed a deed purporting to convey the property in dispute to the respondent Welcome Milling and Smelting company, and the deed here assailed is from the Welcome Company to the Glenwood Company, dated April 15, 1895, the object of which was to reinvest the latter with legal title to the premises. The view adopted by the trial court is that the transfer of April 15, 1895, was fully justified, for the reason that the property conveyed was never the property of the Welcome Company, inasmuch as the original transfer from the Glenwood Company to the Welcome Company on the 20th day of January, 1893, was unauthorized, and absolutely void. The Glenwood Company, according to its charter, was organized only "for the purpose of purchasing, leas-

ing, and working veins, lodes, and mines of gold, silver, and other metals, for the erection of mills, furnaces, and other works for the reduction of ores," and the property attempted to be disposed of comprised its entire assets, and was indispensable to a continuance of the corporate business. Although it is provided by the charter and by-laws of the Glenwood Company that its principal place of business shall be the city of Lead, the transfer of its property to the Welcome Company was determined upon at a special meeting, held on the 30th day of November, 1892, without notice of any kind, at a branch office of the company in the city of Deadwood, in violation of the following requirements of its by-laws: "Special meetings of the board of directors of said company may be held upon two days' notice, by mail or personal service, to each member of said board, stating the time, place, and object of such special meeting; such notice to be given by the secretary or president. And that no business shall be transacted at such special meeting other than that stated in the notice." While the charter of the Glenwood company provides for but three directors, apparently by some inadvertence seven had been elected, and of the four of such present at this meeting three of them were at the time directors of the Welcome Company, and the deed to itself was actually executed by its president and secretary, as similar officers of the Glenwood Company, and the only consideration therefor was certain shares of stock in the Welcome Company, confessedly of no value whatever. It also appears from the evidence and the court found that certain of the stockholders of the Glenwood Company, whose consent to the transfer was never obtained, thereafter entered a protest, and made a demand that the property be reconveyed, accompanied by a tender of the above-mentioned shares of stock in the Welcome Company. Concerning the deed made pursuant to the foregoing demand, and which appellant here seeks to set

aside, the trial court found: "That no part of the property described in plaintiff's complaint was transferred or conveyed with any actual intention whatsoever on the part of either of the defendants herein to delay or defraud the plaintiff or any creditors of said defendant the Welcome Milling and Smelting Company, or any person whomsoever; that the only transfer made by said Welcome Milling and Smelting company to the said defendant the Glenwood Company was the said deed and conveyance of April 15, 1895, and that the same was made in the utmost good faith, for an adequate and valuable consideration, as of right it should have been, and the same did not delay nor defraud, nor tend to delay nor defraud, the plaintiff or any creditor of the said defendant the Welcome Company, or any person whomsoever; that at the time of the transfers referred to and described in plaintiff's complaint the majority of the stockholders of the defendant the Welcome Milling and Smelting Company owned and controlled the majority of the stock in the Glenwood Gold and Silver Mining Company, and at the time of the commencement of this action owned the majority of the capital stock of the defendant the Glenwood Gold and Silver Mining Company." The sole function of these directors being to carry on the corporate business, and promote the objects specified in the charter, it is doubtful if they possessed power to defeat such objects by a sale en masse of all the assets of the corporation without the unanimous consent and formal action of the stockholders, and according to the following authorties the attempted transfer of January 20, 1893, by the Glenwood Company to the Welcome Company was absolutely void; De La Vergne, Refrigerating Mach. Co. v. German Sav. Inst., 175 U. S. 20 Sup. Ct. 20, 44 L. Ed. 65; Abbott v. Rubber Co., 33 Barb. 578; Forrester v. Mining Co. (Mont.) 55 Pac. 229; 3 Thomp. Corp. 3983. Mr. Thompson, the author last cited, adher-

ing to the doctrine of Byrne v. Manufacturing Co., 65 Conn, 336, 31 Atl. 833, 28 L. R. A. 304, and other similar cases, expresses the view that: "A transfer by a corporation of its entire assets and property of every description to another corporation in exchange for the shares of the latter, made not with the intention of winding up its affairs, and dividing its stock among its own stockholders, nor as a temporary arrangement, but as a permanent investment, is *ultra vires,* and may be set aside at the suit of a dissenting stockholder. Nor is the right of the stockholder to contest it at all affected by the fact that it may be profitable to the corporation. It is enough that it is *ultra vires."* 7 Thomp, Corp. 8356. As the statute (Comp. Laws, § 2930) requires that "the meetings of the stockholders and board of directors of a corporation must be held at its office or principal place of business," and the charter and by-laws of the Glenwood Company designate Lead City as its principal place of business, its directors, at a special meeting held, without notice, at a branch office, in the city of Deadwood, were without power to authorize the transfer of all its property to the Welcome Company in exchange for the worthless stock of the latter; and the deed afterwards executed, and never ratified by all the stockholders, conveyed nothing to which the lien of appellant's judgment could attach. Upon the evidence the court found: "That the certain judgment referred to in paragraph 2 of plaintiff's complaint herein was recovered upon obligations of said defendant the Welcome Milling and Smelting Company contracted prior to the making of the transfer referred to in plaintiff's complaint and in defendant's answers; that said obligations upon which said judgment was recovered were made and entered into prior to the 28th day of November, A. D. 1892." The obligation which appellant reduced to judgment, and now seeks to enforce, consists principally of certian stock subscriptions to the Welcome Company made by him-

self and assignors prior to the execution of the first deed, and he therefore could not have been led to part with anything of value by reason thereof. Manifestly, no credit was extended on the faith of the property conveyed, and the doctrine of estoppel has no application. Dunn v. Bozarth (Neb.) 80 N. W. 811; Cottrell v. Smith (Iowa) 18 N. W. 865; Lockren v. Rustan (N. D.) 81 N. W. 60. At page 258, 14 Am. & Eng. Enc. Law (2d. Ed.) the author of an article on fraudulent conveyances says: "If a debtor holds the legal title to property which in equity belongs to another, his conveyance of the legal title to such equitable owner will not be deemed fraudulent as to the creditors of the former." That the conveyance of April 15, 1895, was fraudulent as to the creditors of the Welcome Company was the theory upon which the case was tried, and, as the retransfer to the Glenwood company was of property belonging in equity to such corporation, such deed was in no manner fraudulent as to appellant, a subscriber to the capital stock of the Welcome Company. As bearing upon the question of fraud, and for the purpose of showing the financial condition of the Welcome Company prior to the execution of the deed here sought to be set aside, a judgment obtained against such corporation at the suit of a stranger was introduced, over appellant's objection, and there is no merit in the contention that this constitutes reversible error. Manifestly, under the circumstances disclosed by the record, a court of equity would require the Welcome Company, at the suit of a nonassenting stockholder of the Glenwood Company, to execute the deed in question; and the mere fact that this was done without litigation in no manner impugns the good faith of the transaction. In view of all the facts disclosed by the record, we conclude that the protest and demand that such deed be executed was made within seasonable time, and that all the rulings of the trial court concerning the admission and rejection of evidence

are sustainable. Such facts, viewed in the light of the law as we find it, fully sustains the conclusions reached in the court below, and the judgment appealed from is affirmed.