<div style="margin-left:auto;text-align:right">
CLARK'S ADM'R,
*vs*
RUCKER.

ting be recorded, or the possession accompany the gift. (2 *Stat. Law*, 1480; 7 *J. J. Mar.*, 202.)
</div>

---

# Clark's Administrator, &c. *vs* Rucker.

### APPEAL FROM THE MEADE CIRCUIT.

### *Fraud. Trusts.*

JUDGE SIMPSON delivered the opinion of the Court.

JOHN CLARK having engaged in a trading adventure with a man by the name of Watts, and apprehending an unfavorable result in their speculation, made to his brother William an absolute bill of sale of all his slaves, for the purpose of placing them out of the reach of his creditors in the event that the expedition in which he had embarked proved unfortunate, with a secret understanding that the vendee was to hold them in trust for the benefit of the vendor's wife and infant child.

Shortly afterwards John Clark died, and William Clark took possession of his farm, and the slaves so conveyed to him. He managed them for the benefit of the widow and her child, sometimes admitting that he held the

<div style="margin-left:auto;text-align:right">
7bm583
f113 896

CHANCERY.

*Case 142.*

*September 27.*

J. C. conveyed his property to W. C. by absolute deed in secret trust, however; for the benefit of the wife and child of J. C. W. C. becoming involved, conveyed the property to the widow &c. of J.C. he having died. Held that the conveyance was valid, and the creditors of W. C. could not subject the property so conveyed to their debts.
</div>

slaves merely in trust for them, and on other occasions claiming them as his own property. John Clark being indebted, at the time of his death, for the tract of land then in his possession, some of the slaves were sold by William and the proceeds of the sale applied to the payment of John's debts.

William Clark having afterwards, as one of the securities of the Sheriff of Meade county, in his official bond, become liable for considerable sums of money on account of the Sheriff's delinquency, executed to the widow and infant child of John Clark, deceased, a bill of sale, reciting the trust aforesaid, and transferring to them the • residue of the slaves remaining unsold, in fulfilment of the trust.

The creditors who have unsatisfied judgments against the Sheriff of Meade and his securities, having applied to the Chancellor to set aside the last mentioned conveyance, on the ground that it was voluntary and fraudulent as to creditors, he decided that the slaves were still liable for the debts of William Clark, and decreed a sale of them for that purpose, and this question is now presented to this Court for its determination.

Had the fraudulent vendee still retained the title to the slaves, they would no doubt have been liable for the payment of his debts, because as between the parties themselves, the contract being executed, would have been obligatory on them, and irrevocable at the instance of the vendor, from whom the title had passed by the bill of sale.

The slaves, however, would still have been liable for the debts of the fraudulent vendor, and the creditors of the vendee would have had no just cause of complaint had the slaves been so applied, which shows that their right to have the slaves appropriated to the payment of their demands, is not an indefeasible one, although the fraudulent sale may have been the means of giving the vendee a delusive credit.

The sale and transfer to the widow and her child, although such as the fraudulent vendee could not have been compelled to make, yet having done that which in good conscience he should have done, and the title having been

—But if the fraudulent vendee had retained the title to the property, it would have been liable for his debts.

Though a fraudulent vendee may not be compelled to recovery to his fraudulent vendor, yet if he do so before any lien be acquired by a creditor of the vendee, such a creditor cannot reach the property.

vested in, and the possession delivered to, the widow and child of the fraudulent vendor, before the creditors of the fraudulent vendee had acquired any lien on the property, the circumstances attending the transaction may be relied upon by them by way of defence to the claim asserted by the creditors.

On a verbal contract for land, no action can be maintained, nor is such a contract enforcible in equity ; yet if the vendor convey the land to the purchaser by parol, he can, when invested with the title, set up by way of defence, his verbal contract of purchase, against the claim of an intermediate purchaser, who though invested with an enforcible equity against his vendor, cannot deprive the purchaser by parol of the estate which he has acquired. So if a debtor, in payment of a debt barred by the statute of limitations, or a bankrupt in payment of a debt from which he is released by his discharge in bankruptcy, were to transfer property to his creditor, such transaction could not be overthrown by other creditors on the ground that the transfer was merely voluntary. The debtor in both instances being under a moral obligation to pay the debt, this obligation would constitute a sufficient consideration to support the transfer. For the same reason the conveyance in this case cannot be deemed merely voluntary. It may be, that the fraudulent vendee was induced to make this transfer alone from the consideration that he could not hold the property himself, and with a view to prevent his creditors from reaching it. He has, however, done that which justice required at his hands, and if he has been actuated by a fraudulent motive, this fraud on his part will not vitiate the conveyance. It is sustained, so far as the widow and infant are concerned, by a valid consideration, and they have in the transaction been actuated alone by a desire to obtain that property, which in justice and good conscience they had a right to, and which their vendor was under a moral obligation to convey to them; and have not participated in the fraud committed by him on his creditors.

As the widow and infant child of John Clark had acquired the title to these slaves and the possession of them, before the creditors of William Clark had obtained

a lien thereon by execution or otherwise, we are of opinion that they cannot be subjected in their hands, to the payment of the debts of said creditors.

Wherefore, the decree of the Court below subjecting said slaves to the payment of said debts, and decreeing a sale of them for that purpose, is reversed and cause remanded for a decree on this subject as herein indicated.

*Morehead & Reed and Hardin* for appellant; *Grigsby and Harris* for appellees.