## Martin v. Martin et al.

## Frasure et al. v. Martin's Adm'x et al.

March 21, 1941.

C. B. Wheeler for H. D. Martin.

Joe P. Tackett and Joseph D. Harkins for Ava Martin.

Combs & Combs for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing in part and affirming in part.

These two cases were heard together on appeal and both will be disposed of in this opinion. This is the second appeal in the case of Ava Martin Frasure v. Mousie Martin's Adm'x, and the opinion on the former appeal may be found in Martin v. Martin, 282 Ky. 411, 138 S. W. (2d) 509. The only question involved on the present appeal in Ava's case is whether the judgment the first appeal directed should be entered in her favor

for $15,059.71, with 6 per cent. interest from September 29, 1934, should be paid by Hazardore D. Martin, personally, or whether it should be satisfied from funds Mousie received from her brother, Tom. Since that decision rests on the determination of the issues of the case of H. D. Martin v. Josie Martin et al., as to whether certain deposit certificates were the property of Hazadore or of Mousie's estate, we will first dispose of the appeal in H. D. Martin v. Josie Martin et al.

Mousie died intestate on November 5, 1934, and her brother, Hazadore, claimed her entire estate by virtue of a deed she executed on September 29, 1934, conveying to him her real estate and transferring to him all of her personal property, including the deposit certificates referred to on the former appeal in Martin v. Martin, 282 Ky. 411, 138 S. W. (2d) 509. Josie Martin, joined by all the heirs and the administratrix of Mousie, brought this action against Hazadore to set aside the deed of September 29th, alleging Mousie lacked mental capacity to execute it and that it was obtained by fraud and undue influence. Hazadore traversed the allegations of the petition, then pleaded the deed was supported by a consideration, and by way of counterclaim sought to recover from Minnie Miller $2,000 he alleged she owed Mousie, which debt he avers was transferred to him by the deed. A reply completed the issue.

The chancellor cancelled the deed, except wherein it reconveyed to Hazadore a tract of land he transferred to Mousie in 1922 as protection against threatened litigation. Hazadore appeals from that part of the judgment cancelling the deed, and Mousie's heirs and administratrix prosecute a cross-appeal from that part of the judgment refusing to cancel the deed relative to land Mousie reconveyed to Hazadore.

It may be helpful to give a brief synopsis of the material facts which enter into the determination of the case. Mousie was 59 years of age at her death and Hazadore was 52. Neither had ever married, and for 20 years Mousie had lived in Hazadore's home with another maiden sister, Nancy. Mousie's education was limited to the fourth grade but she was an industrious and frugal woman, assisted Hazadore in the postoffice and in his store, besides helping with the housekeeping and gardening. Hazadore had a much better education, former-

ly taught school, and was a country postmaster and storekeeper, and Mousie entrusted to him practically all of her banking, and other business. Almost within a stone's throw of the home he maintained for his two maiden sisters, Hazadore lived in an unmarried state with Montie Hughes, who had five children by him. This was humiliating to Mousie, who resented Montie and her illegitimate children. On one occasion when Montie came to Mousie's home for water, they had a fight, resulting in Montie striking Mousie in the face with a rock which left a scar. Mousie was heard to say by several disinterested witnesses that Montie had ''shed my blood and she and her children will never get a dollar of my money.'' In this same connection, Mousie said she would leave Hazadore nothing so that Montie and her children would not enjoy her property.

Mousie underwent a severe operation for cancer in the abdominal region at a Pikeville hospital in September, 1933. After remaining in the hospital a month, she returned home and her health was fairly good until the following spring and summer, when she became practically bedridden with a heart ailment which caused her much suffering. She planned to enter a hospital the first week in October and before she left, Hazadore requested a conveyance of the land he put in her name in 1922 when he feared Montie was going to sue him. He testified Mousie instructed him to draw the deed, which he did and read it to her. He further testified that when the deed was presented to Mousie, she directed him to incorporate therein her real estate and all of her personal property, including the deposit certificates referred to in our first opinion; that he took the deed back to his store and put in it the other property, using a fountain pen which he dipped into an ink bottle; that the deed was then read over to her and she remarked that was what she wanted; that he went to the home of his cousin, Grover Martin, a notary public, to have him come and take Mousie's acknowledgment, but that Grover was away and he went for him again that night and Grover came and took her acknowledgment. Grover testified that when he asked Mousie if she wanted him to read the deed to her, she replied in the negative.

Hazadore further testified that his sister, Nancy, had just stepped out of the room, and when Mousie signed and acknowledged the deed only he, Mousie and

Grover were present. Minnie Miller was staying with her sister, Mousie, and the day before the deed was executed Hazadore told her there was no reason for her to stay longer. Grover on two recent previous occasions had come to the house and Minnie was suspicious. Josie testified Hazadore said in reference to the deed, "I beat them to it." Lilly Clark, another sister, testified that when she asked Hazadore why he did not obtain the deed when some of the heirs were present, his reply was that he was afraid he could not get it then. Jake Salisbury, a disinterested witness, testified Hazadore remarked to him that he did not know whether Mousie intended to deed everything to him, but that he and Grover were the only ones who knew anything about it. Annie Whitt, Grover's sister, testified that the night Hazadore came to her house, Grover said he was going to take an acknowledgment to a deed wherein Mousie was reconveying to Hazadore his land; that Grover said he wanted to do some writing and for her not to bother him and Hazadore. The first part of the deed conveying the land formerly owned by Hazadore is written in a different colored ink from that part of the instrument immediately following. There is testimony in the record that Hazadore told some of his sisters that the heirs of Mousie would each receive $2,000 from these deposit certificates in conformity with the terms of Tom's will. But previous to his death, Tom had transferred to Mousie the $35,061.88 represented by these certificates, hence his will did not dispose of this money.

The chancellor did not favor us with an opinion showing on what ground he cancelled the deed, but as there was sufficient evidence for him to have based his judgment upon undue influence, we presume he rested it upon that ground. Hazadore argues there was no evidence of his having unduly influenced Mousie; that at most, the record merely shows an opportunity for undue influence. He contends that an opportunity for undue influence is not sufficient for the setting aside of an instrument, but there must be proof it was exercised; that influence growing out of acts of kindness and confidence does not amount to undue influence. It cannot be doubted that this is the correct rule. McCutcheon v. Bichon, 267 Ky. 694, 103 S. W. (2d) 76; Smith v. Smith, 243 Ky. 240, 47 S. W. (2d) 1036. But undue influence is a subtle thing and can rarely be shown by direct proof and in

many instances the facts and circumstances leading up to and surrounding the execution of the desired instrument must be relied upon to establish its existence, Hanna v. Eiche, 258 Ky. 282, 79 S. W. (2d) 950; Stewart v. Douglas, 235 Ky. 121, 29 S. W. (2d) 637. Where one is physically and mentally infirm, or where a confidential relation exists, and there is a transfer of property from the weaker to the stronger character, the law scrutinizes the transaction with a critical eye and places the burden upon the beneficiary to show that it was fair and devoid of inequitable incidents. If influence has been acquired and abused, or confidence imposed upon, equity will grant relief. McDowell v. Edwards' Adm'r, 156 Ky. 475, 161 S. W. 534; Gregg v. Hedges' Guardian, 227 Ky. 268, 12 S. W. (2d) 854, and authorities therein cited.

In the instant case the stage setting was almost perfect for the enactment of the drama of undue influence. Mousie was physically infirm and was preparing to enter a hospital; her education was meager while Hazadore's was good. He was strong and aggressive and she had lived in his home for 20 years and had entrusted him with her business. He asked her to reconvey him the property he had formerly put in her name and after he drew the deed he testified she directed him to incorporate therein her real estate and some $35,000 in personal property. The day before he wrote the deed Hazadore had his sister, Minnie Miller, to leave his home, and on the night the deed was signed and acknowledged his sister, Nancy, so he testified, had just stepped out of the room. Then, Mousie signed and acknowledged the deed after telling the notary she did not want him to read it to her. Not only was there secrecy surrounding the execution of the deed, but it was not recorded until December 24, 1934, almost three months after its execution and a month and a half after Mousie's death. The chancellor correctly set aside the deed because of undue influence and we are convinced from the evidence that judgment is correct. The record in this case is voluminous and the briefs are extensive, therefore we will not attempt to analyse appellant's evidence, but it will suffice to say he did not meet the burden of proving this transaction was fair and free from inequitable incidents, and there is abundant evidence to sustain the chancellor's decree. Phillip v. Phillips' Ex'rs,

248 Ky. 268, 58 S. W. (2d) 367; Gregg v. Hedges' Guardian, 227 Ky. 268, 12 S. W. (2d) 854.

We find no merit in the cross-appeal seeking to reverse that part of the judgment wherein the chancellor refused to set aside the deed insofar as it reconveyed to Hazadore the land he formerly voluntarily conveyed to Mousie. Indeed, appellees do not press their cross-appeal in briefs. While equity will not grant relief to one who has entered into a fraudulent contract, and Hazadore could not have compelled Mousie to reconvey to him the land he fraudulently transferred to her, Asher v. Asher, 278 Ky. 802, 129 S. W. (2d) 552; yet she was under a moral obligation to do so, and her subsequent conveyance to him should be favorably considered by a court of equity, and should not be regarded as the result of undue influence. 27 C. J. 658, Section 429; Clark v. Rucker, 7 B. Mon. 583, 46 Ky. 583; Berg v. Frantz, 113 Ky. 888, 69 S. W. 801, 24 Ky. Law Rep. 689; Powell v. Ivey, 88 N. C. 256; Olson v. Peterson, 88 Kan. 350, 128 P. 191; Springfield, etc., v. Roll. 137 Ill. 205, 27 N. E. 184, 31 Am. St. Rep. 358. See Annotations 89 A. L. R. 1168.

Exceptions were sustained by the chancellor of the testimony of Hazadore concerning his transactions and conversations with Mousie, but he overruled exceptions to the testimony of the various heirs as to their conversations and transactions with Mousie upon which they based their opinions as to her mental capacity. Section 606, Subsection 2 of the Civil Code of Practice, prohibited Hazadore from testifying to conversations and transactions had with his deceased sister, Mousie; but when the opposite side called him as if upon cross-examination and interrogated him at length concerning the whole case, they thereby waived the provisions of Section 606, Subsection 2 of the Civil Code of Practice, and Hazadore became a competent witness in his own behalf. Smith v. Gilligan's Adm'r, 276 Ky. 533, 124 S. W. (2d) 798. Under Section 606, Subsection 2 of the Civil Code of Practice, Mousie's heirs were not competent to testify as to her mental condition, inasmuch as their testimony related to transactions and conversations with her. Combs v. Roark, 206 Ky. 454, 267 S. W. 210; McKnight's Adm'x v. McKnight, 282 Ky. 522, 139 S. W. (2d) 426. We have not considered the incompetent testimony given by Mousie's heirs, but have found

in the record sufficient competent testimony to uphold the chancellor's judgment that the deed was secured by Hazadore through undue influence. A multitude of exceptions were filed by each side to the testimony offered by the other, and it would extend this opinion unduly were we to discuss such exceptions. It will suffice to say we have given careful consideration to all exceptions filed. We find that while the chancellor erred in some instances, most of his rulings were correct (otherwise than where they related to the testimony of Mousie's heirs and of Hazadore), and we have only considered the competent testimony in reaching our conclusions herein.

The chancellor properly set aside the deed of September 29th, insofar as it conveyed Mousie's real estate and transferred her personal property to Hazadore, and properly directed that he turn over to Mousie's administratrix the certificates of deposit and the other personal property he acquired under this deed. However, the chancellor directed that Hazadore turn over the entire amount of such certificates, $35,061.38, when the record shows that a certificate for $711.50 was cashed by Mousie to pay her brother Tom's funeral expenses, and another of $500 was applied on attorney's fees which she owed Mr. Hopkins. As these certificates were not received by Hazadore he should not be charged with them and to that extent the judgment is erroneous and must be reversed.

Appellant claims that the chancellor under the pleadings had no authority to decree that he should be accountable for the other personal property received under this deed, nor for the royalties he obtained from Mousie's land, contending that the petition only sought to recover the deposit certificates. We cannot sustain such contention as the petition asks that the deed be set aside and that Hazadore be required to account for all property received thereunder. It is further argued by appellant that if we sustain the chancellor's judgment, we must determine what part of the bank account he and Mousie jointly maintained in her name belonged to him and what part belonged to her; also, that he should be given credit for hospital, doctor and funeral bills expended in her behalf. These questions were not determined by the chancellor and the last paragraph of the judgment reads: "All issues not specifically adjudged and decided herein are reserved for further adjudication

and this cause is now continued." Therefore, we are not called upon to pass on these issues on this appeal.

The judgment in the case of H. D. Martin v. Josie Martin et al. is reversed as to the amount of the certificates he must account for as above indicated; and in all other respects it is affirmed. The judgment is affirmed on the cross-appeal.

The appeal in the H. D. Martin v. Josie Martin et al. having been disposed of, and since we have reached the conclusion that the chancellor properly required Hazadore to account to Mousie's administratrix for all certificates of deposit received by him, it follows that the chancellor in Ava Martin Frasure et al. v. Mousie Martin's Administratrix et al. correctly decreed the $15,059.71 adjudged Ava, as directed in the opinion on the former appeal in her case, should be satisfied by Mousie's administratrix, rather than by Hazadore. It is manifest that when Mousie's administratrix recovered these certificates from Hazadore in the case of H. D. Martin v. Josie Martin et al., the administratrix must satisfy the judgment of the court decreeing that Ava was entitled to receive $15,059.71 of these certificates, and the judgment of the chancellor is affirmed in the case of Ava Martin Frasure et al. v. Mousie Martin's Adm'x et al. Ava Martin Frasure and Hazadore appeal from so much of the judgment as did not direct the interest on the $15,059.71 from September 29, 1934, be paid by Mousie's administratrix. But the question as to who should pay this interest was not adjudicated by the chancellor and was expressly reserved for further determination, therefore, this question is not before us. The judgment is affirmed in Ava Martin Frasure and H. D. Martin v. Mousie Martin's Adm'x.

There were two transcripts of the record filed in this court on the appeal of H. D. Martin v. Josie Martin et al., and a motion was filed by Hazadore to strike the record filed by appellees, which motion was passed to merits. The judgment was rendered on March 4, 1939, from which both the defendant, Hazadore, and the plaintiffs Josie Martin et al. were granted an appeal. Neither party filed a transcript of the record in this court within the time provided by Section 738 of the Civil Code of Practice. After the time for perfecting an appeal granted by the circuit court expires without the record

being filed here, then the appeal must be granted by this court as provided in Section 734 and Section 745 of the Civil Code of Practice. It was as much incumbent upon appellees to file their record within the time provided by Section 738 as it was upon appellant, and when they did not file it within that time then they could only appeal by motion made in this court.

But appellees contend they were not attempting to prosecute an appeal but were proceeding under Section 741 which authorizes them to file the record in this court. The answer to that argument is they did not file the record here until the time had expired under which it could have been filed in this court from the appeal granted below. There is no authority by which appellees could file their record in the manner in which they did file it. As the right of appeal granted appellant by the lower court had expired, he properly moved this court for an appeal and filed his transcript. Since appellee's record was attempted to be filed under Section 741, and as the time for filing it had expired under the appeal granted below, it must be stricken from the record.

Appellees rely upon McCormack v. Clouse, 266 Ky. 450, 98 S. W. (2d) 892, as authorizing them to file their record after the expiration of the time provided under Section 738 of the Civil Code of Practice. But there appellant was attempting to have this court grant the appeal, and we held that his statement in effect was an application for an appeal and would be so regarded. Here, appellees do not contend they were appealing but say that they were bringing up the record under Section 741. Therefore, the Clouse case has no application. Appellees further contend that the cause was ready for submission on January 5, 1940, under their record and as the cause was submitted, or should have been submitted, on that date, appellant's motion to strike came too late. However, the record shows the case was not ready for submission on January 5, 1940, and it was not submitted until April 12, 1940, hence appellant's motion to strike was seasonably made. The only effect in striking appellee's record is to burden them with the cost thereof.

The judgment in H. D. Martin v. Josie Martin et al. is reversed in part and affirmed in part, with directions to enter a judgment in conformity with this opinion;

and the cost should be paid three-fourths by appellant and one-fourth by appellee. The judgment is affirmed on the cross-appeal. All questions not expressly passed on are hereby reserved. The record filed by appellees is stricken on motion of appellant and the cost of that record and all costs connected with the filing of same must be borne by appellees.

The judgment in the case of Ava Martin Frasure v. Mousie Martin's Administratrix is affirmed, and all questions not passed on are expressly reserved.