## McKINNEY v. MONTGOMERY et al.

Court of Appeals of Kentucky.
May 2, 1952.

L. C. Lawrence, Jamestown, Ralph Hurt, Columbia, for appellant.

Montgomery & Montgomery and Moore & Pittman, Liberty, for appellees.

STEWART, Justice.

W. H. McKinney, the father of one son and four daughters, executed what purported to be his last will under date of July 27, 1946, when 85 years of age, devising a 90-acre farm to Bowen McKinney and George McKinney, two sons of Walter McKinney, a cousin of the testator. No testamentary disposition was made of the residue of the estate, comprising three other tracts of land and all personal property consisting mainly of $2,500 in cash. However, the farm attempted to be willed away was definitely established to be the valuable portion of the estate. We shall henceforth refer to Walter McKinney as "Walter".

Upon the testator's death at 89, Walter, named as decedent's executor, offered the alleged will for probate before the Casey County Court, and at a hearing this court refused to probate the document. An appeal from this ruling was prosecuted to circuit court by Walter as guardian of his two sons with the five heirs-at-law of the testator named as defendants. A jury found the paper not to be the last will and testament of W. H. McKinney.

On this appeal the guardian assigns as errors: (1) that the verdict is flagrantly against the evidence; (2) that there was insufficient proof to warrant an instruction on undue influence; and (3) that the questions asked of witnesses for appellees as to the mental capacity of the testator were improper.

In support of the first ground, appellants contend there was a complete failure on the part of appellees to establish the mental incapacity of the testator on the day the instrument was executed. The determination of this question hinges upon the evidence. Numerous persons testified, but it is felt that no useful purpose will be served by detailing the evidence of each one who testified. We therefore summarize the most pertinent facts bearing upon the testator's state of mind covering the last four or five years of his life.

It was shown that shortly before the controversial paper was executed, W. H. McKinney fell out of a barn loft, injuring his head. Thereafter he was bedfast or closely confined to a great extent until his death, and a daughter, Jessie Hughes, and her husband in 1945 or 1946 moved into a home he deeded her to look after him. He complained to one neighbor several times about a pain in the side of his head caused by the fall, and he told a woman who often visited him that his mind had not been right since his accident. Many testified that upon meeting neighbors of long acquaintance during these years the testator often failed to recognize them, and he would frequently confuse his children with one another. Then, in his conversations, it became a common practice for him to begin talking about one subject only to suddenly switch to a topic entirely unrelated to that under discussion. Once while sick a neighbor sent him some food which he refused to eat because he imagined it was poisoned. No medical testimony was introduced relative to his mental condition for the reason that, throughout his life, he refused to allow a physician to treat him. He had no faith or belief in doctors. According to a number of witnesses his mind grew progressively worse until his death, and those who had known and observed him for years, called to testify for appellees,

stated that in their opinion he was lacking in testamentary capacity at the time the document was executed.

Appellants introduced testimony to the effect that the testator maintained a sane mind up until the time of his death. Most of appellants' witnesses, who lived in the neighborhood and had known the testator for many years, stated that he had sufficient mentality to make a rational survey of his property and dispose of it, knowing at the same time the natural objects of his bounty and his duty to them. It is insisted by appellants there was no showing by competent testimony of anything abnormal or irrational as to the mind of the testator.

█ It is evident that where the testimony was conflicting as here the court correctly left to the jury's determination under an appropriate instruction the question as to whether the testator possessed mental capacity sufficiently to execute a will.

Appellants vigorously assert there was no proof of any character to support an instruction on undue influence. On the contrary, we think there is much in this case that appellants have not explained away on this score. Walter, a graduate civil engineer and a successful farmer who followed both occupations, resided in Lincoln County thirteen miles from W. H. McKinney's home. When W. H. McKinney became infirm, the younger cousin became a sort of confidential advisor to the older man and made many visits to the elder McKinney's residence for business conferences. Walter said he furnished free transportation to the testator for any trip the latter wished to make; and, on an occasion in the early part of 1946, W. H. McKinney asked his cousin to drive him to Liberty, the county seat, so the older man might consult C. F. Montgomery, an attorney, on certain legal matters. Walter arranged the appointment with Montgomery over the phone and the McKinneys made the journey as planned. After the attorney had prepared a deed to a small house and a few acres from W. H. McKinney to his daughter, Jessie Hughes, with a stipulation therein that she should care for him the rest of his life, the lawyer was instructed by the older McKinney in Walter's presence to

draft a will to Bowen McKinney, then age 14, and George McKinney, then age 16, the sons of Walter, devising them the 90-acre tract now in litigation. Montgomery refused to draw up the instrument requested by W. H. McKinney, advising him that, because of his advanced age, a will to another man's children would not in his opinion stand up in court. Montgomery testified that at the time W. H. McKinney came to see him about the will, the testator "was in bad shape physically and mentally". The matter did not end here, however, because, thereafter on July 27, 1946, the testator went to Hustonville, a village fifteen miles beyond Liberty, had W. H. Hinson, a banker there, prepare the will for him that is involved herein, and then, by means of transportation that is unexplained, he traveled back to Liberty where he had the paper witnessed and deposited with the county court clerk. Walter stated that he knew nothing concerning the execution of the will until some two or three months thereafter.

It was brought out by the testimony of Hinton and of Walter that the testator told them the reason he gave his farm to the two boys of Walter was because he wanted the "old McKinney home place" he had inherited from his mother to stay in the McKinney family and he was afraid his son would not keep it that way. Actually, this explanation does not sound plausible because all of his five children, not his son alone, would have inherited this land in case of intestacy. Moreover, it was definitely established that the testator was on affectionate terms with all his children at the time he made the will to Walter's sons. It is to be noted that only two of the four children of Walter were mentioned in the paper, and it was shown that the testator had come in contact with these young boys in only a casual manner during his lifetime. We might also add that the testator had made distribution of his property by a will dated November 25, 1944, to four of his children, but one daughter was excluded therefrom because she had married against his wishes. However, he later became reconciled to her and destroyed this will, thus manifesting, appellants claim, an in-

248 S.W.2d—46

tention that all of his children should share equally in his estate.

We have held that where a will is unnatural in its provisions such a fact, when unexplained and when corroborated by even slight evidence, is sufficient to take to the jury the question of undue influence. Higgs' Ex'x v. Higgs' Ex'x, 286 Ky. 236, 150 S.W.2d 681; and Kiefer's Ex'r and Ex'x v. Deibel, 292 Ky. 318, 166 S.W.2d 430. The exercise of effort which produces the will need not be by the beneficiary directly but may be through an agency, Stewart v. Douglas, 235 Ky. 121, 29 S. W.2d 637, or by a third person, Pinson v. Stratton, 220 Ky. 557, 295 S.W. 859. Undue influence is a subtle thing and can rarely be shown by direct proof. In many instances the facts and circumstances leading up to the execution of the desired instrument must be relied upon to establish its existence. Martin v. Martin, 286 Ky. 408, 150 S.W.2d 696.

In this case we have certain elements that might well create a pattern of undue influence. Appellees adduced a considerable volume of testimony that tended to establish the mental incapacity and the physical infirmity of the testator. It was conclusively established that Walter, a strong character, had gained the complete confidence of an aged, sickly person. Appellants did not satisfactorily explain, we think, the unnatural character of this will in the disposal by the testator of the most valuable portion of his estate to his cousin's two sons. We have already adverted to certain acts of Walter that indicate he could have participated in the preparation of the will. It is our opinion, viewing the evidence as a whole, that there is ample basis in the proof coupled with the will itself to sustain an instruction on undue influence.

There is no merit to the third contention wherein it is argued that the lower court permitted numerous witnesses of appellees to give opinion evidence as to the testator's mental incapacity without a showing of facts upon which such opinions were predicated. It seems to us that the parties hereto pursued almost identical tactics in

722

adducing their proof on this question. The opinion of most witnesses who testified as to W. H. McKinney's mental condition was based upon knowledge gained from long acquaintance with and observation of this person. This evidence was of such a direct and positive nature that we consider it competent.

Wherefore, the judgment is affirmed.