**Wilburn CREASON, Appellant,**

**v.**

**Melvin CREASON, Crissie Johnson, and Beatrice Peppers, Appellees.**

Court of Appeals of Kentucky.

Jan. 22, 1965.

Rehearing Denied June 25, 1965.

T. L. Burress, Greensburg, Clyde Williams, Jr., Campbellsville, Hatcher & Lewis, Elizabethtown, for appellant.

Shuffett & Butler, Robert L. Dowell, Greensburg, for appellees.

C. WARREN EATON, Special Commissioner.

W. L. DeSpain, who before his death was a resident of Green County, Kentucky, executed simultaneously what purported to be a will and a deed of conveyance on Feb-

ruary 27, 1959, when he was 83 years of age. DeSpain had been a widower for several years prior to said date and early in 1958 his daughter, an only child, died, leaving four children who were DeSpain's grandchildren and only surviving heirs-at-law. By the terms of said will DeSpain bequeathed to each of three of his grandchildren, the appellees, Melvin Creason, Crissie Johnson, and Beatrice Peppers, the sum of $1,000, and he then bequeathed and devised the remainder of his estate to the appellant, Wilburn Creason, the remaining grandchild. By the deed said DeSpain purported to convey to Wilburn Creason a farm of 185 acres, with the provision therein that possession should not pass to Wilburn until the death of the grantor. Both the will and the deed were prepared by an attorney and were signed by the mark of DeSpain in the presence of two witnesses. After execution of the two instruments they were left for safe-keeping by DeSpain in the possession of the Deposit Bank in Greensburg, where they apparently remained until after his death. The four children shall herein be referred to by their first names and the testator by his last name.

DeSpain died on February 17, 1962, at the age of 86. Thereafter someone from the bank apparently presented the will for probate and it was probated and ordered recorded by the Green County Court. On February 27, 1962, the deed was delivered by the bank to Wilburn, who recorded it in the County Court Clerk's office on May 11, 1962.

Appellees filed their action on April 28, 1962, asking that both the will and the deed be set aside and declared void on the grounds that (1) DeSpain was mentally incapacitated to make the will or deed and (2) he was coerced into signing same by undue influence of appellant.

The case was tried before a jury and after a somewhat hectic and extremely long trial, which appears to have lasted perhaps a week or longer (the exact day-to-day events not being definitely reflected by the transcript or the trial order), the court instructed the jury on the questions of mental capacity and undue influence as to the will only. After lengthy deliberations consuming parts of two days, nine members of the jury returned a verdict which read: "We, the jury, find for the plaintiffs." As the result of the verdict, a judgment was entered setting aside both the will and the deed.

This appeal was then prosecuted by the appellant, Wilburn Creason, and a reversal sought on the following grounds:

(1) The court erred in overruling the motion of the appellant for a directed verdict at the conclusion of the plaintiff's case, and again at the conclusion of all of the evidence.

(2) The verdict and judgment are contrary to the law and evidence.

(3) The court erred in the admission and rejection of evidence.

(4) The court erred in refusing to allow attorneys' fees for the propounder of the will and in refusing to adjudge costs against the estate.

The greater part by far of appellant's brief and argument is directed to the first two grounds mentioned above, making necessary a review of the evidence. Numerous persons testified and the transcript of the evidence is voluminous; however, it is felt that no useful purpose would be served by detailing the testimony of each witness but that perhaps a summarization of the most pertinent facts should be considered on the question of DeSpain's state of mind and the undue influence in this case.

Prior to August 1958 it appears from the evidence that DeSpain, living alone on his own farm, had been able to live a reasonably normal existence with the help of his various grandchildren and friends; however, he was suffering from high blood pressure and an advanced stage of arteriosclerosis. Around the first of August,

1958, having been discovered by neighbors lying in his yard in an unconscious state, he was transported to a hospital in Elizabethtown, Kentucky. The history indicates that his bed had not been slept in the previous night and that as a result of a fall he had sustained fractured ribs. He was admitted to the hospital on August 2nd and discharged on August 9th, 1958. While there he was first seen by Dr. Louis Aaron and then turned over to Dr. Fred Rainey. Both Doctors Aaron and Rainey diagnosed DeSpain's condition as arteriosclerosis, high blood pressure, fractured ribs, and uremia (kidney poisoning). It was their testimony that he was senile and considerably confused and was suffering from dementia or a mental state usually produced by the other conditions referred to herein. While Dr. Rainey could not state with absolute certainty whether after August, 1958, DeSpain's condition would have become better or worse, he was of the opinion that without treatment the condition would probably not have improved and would have been expected to get worse, and that with treatment he might or might not have improved. He was of the opinion that during this period of hospitalization DeSpain would not have had the mental capacity required to make a will, but as he had no record of having seen him thereafter until his subsequent admission in February of 1962, he could not state whether he did or did not have the capacity at a particular time between those dates. He testified that the kidney poisoning could cause confusion, that it was not severe but mild, and that it would not be expected to improve, being of a chronic nature. Dr. Aaron further testified that it was difficult to say whether DeSpain in August of 1958 had a stroke or blood clot, but did state that because of his impaired kidney function there was enough poison in his blood to make him confused. The following statement is from the testimony of Dr. Aaron in answering the question of the possibility that DeSpain might have improved after August 1958: "The chances are a thousand to one that he did not improve mentally. We know that he would have had to have continued to have severe kidney damage."

The only other medical witness introduced during the trial was Dr. C. E. Crabtree of Buffalo, Kentucky, who was DeSpain's regular doctor and saw him many times after his first hospitalization in 1958 up until his final hospitalization in 1962. According to Dr. Crabtree, DeSpain's chief troubles were hardening of the arteries, high blood pressure, and senility, the latter probably being caused by the other conditions. He saw DeSpain as a patient on February 17, 1959, and again on March 13, 1959, and was treating him all during this period for high blood pressure. This witness at one point in his testimony stated that at a particular moment DeSpain would have sufficient mind to make a will and to will his property according to the way he wanted it to go, yet on cross-examination he stated as a fact that DeSpain did not have sufficient mental capacity to keep from being influenced by people and that he could easily be so influenced. At another point in his testimony he stated that he had doubts that DeSpain could have qualified to sit down and dispose of his property according to a fixed purpose of his own without anyone's interfering with him. His testimony indicated also that after his hospitalization his physical and mental condition improved for a while but began a gradual downward trend, that by reason of hardening of the arteries his mentality would have been affected, and that the kidney condition could have affected his mentality.

All of the appellees testified as to their association with their grandfather, both before and after August of 1958, their testimony being to the effect that after his hospitalization he seemed to go down physically and mentally and seldom recognized them when they came to visit him. Other witnesses also testified that DeSpain was unable to recognize them and in general the witnesses for appellees testified that he was senile and very childish.

Following his hospitalization in August, 1958, DeSpain was taken to the home of Wilburn Creason where he remained until his final illness in February, 1962. It appears that Wilburn took care of his grandfather all during this period and was his trusted confidant. The proof is conflicting as to whether DeSpain himself was able to carry on his own business without the direction of Wilburn. The evidence shows that Beatrice Peppers borrowed $1500.00 from her grandfather the morning of February 27, 1959, preceding his trip to Greensburg where he executed the will and deed, and that Melvin Creason borrowed $700.00 from him on February 1, 1962. In both of these cases a note was given signed by the borrowers and their spouses. Each of the appellees, however, states that the loan was made directly with Wilburn, that DeSpain was unable to comprehend the transactions, and that they were not able even to discuss the matter with him. Both testified that Wilburn was the person who handled all of the business arrangements. The evidence discloses that Wilburn made all entries of payments of interest on these and other notes in his own handwriting, no entries being made by DeSpain. Although Wilburn denied that he was the one who took care of the business for DeSpain on these loans and testified that he did what he did only at the direction of DeSpain, the evidence is so conflicting that the jury would have been justified in deciding that DeSpain was mentally and physically unable to take care of the matters and that Wilburn was in complete charge.

The testimony of Wilburn Creason and many witnesses for him was in direct conflict with the testimony of the appellees and their witnesses. Appellant's evidence was to the effect that DeSpain was in no way mentally impaired subsequent to his hospitalization and during the year 1959; that he in fact did transact his own business according to his own desires and purposes; that he was not senile; that he clearly recognized his property and that it was his intention to reward Wilburn for the latter's

consideration in taking care of him in his old age. The jury could well have believed on the basis of this testimony that DeSpain met all of the requirements that a person must possess in order to be capable of executing a valid will as stated in New v. Creamer, Ky., 275 S.W.2d 918. Wilburn denied the testimony of the appellees to the effect that he, Wilburn, had on occasion commented that DeSpain was not himself or that he did not know what he was doing, or that his mind was bad.

It was not denied, however, that on the day the will and the deed were executed Wilburn drove his grandfather to Greensburg, that he went with him to the office of the attorney where DeSpain was to take care of his legal affairs, that Wilburn also went with him to secure the witnesses to the instruments and that he accompanied him to the bank where the papers were deposited for safe-keeping. There appears to be some conflict in the testimony of the subscribing witnesses as to whether Wilburn was physically present when the will and deed were signed, but the preponderance of the testimony is that he was not actually in the attorney's office at this time and the attorney preparing the will so testified. On all other occasions when it was necessary for DeSpain to travel to Greensburg or to other distant places it was Wilburn who provided the transportation and who assisted him in his travels.

The appellant strongly contends that his successive motions for directed verdict should have been sustained. The basis for this position is his contention that there was a complete failure to establish the mental incapacity of DeSpain on the day the will was executed. In reviewing the evidence in this case it seems apparent that there was a decided conflict in the evidence and that the evidence presented by the appellees concerning the matter of senility and old age, coupled with memory failure, physical deterioration, uremic poisoning, high blood pressure, hardening of the arteries, childishness, statements on the

part of Wilburn himself as to these conditions, and the many other incidents which would naturally result from any or several of these conditions, was sufficient to justify a conclusion on the part of the jury that the testator did not have sufficient mentality to execute a will under the requirements heretofore laid down by this court, New v. Creamer, supra. It is evident that where the testimony was conflicting as here the court correctly left to the jury's determination under an appropriate instruction the question of whether the testator possessed mental capacity sufficient to execute a will. McKinney v. Montgomery, Ky., 248 S.W.2d 719.

■ The question of undue influence also was submitted to the jury, and appellant likewise complains that there was no proof of any character to support an instruction on the point, though he did not voice any objection at the time the instructions were given as required by the Civil Rules. As stated in McKinney v. Montgomery, supra, "Undue influence is a subtle thing and can rarely be shown by direct proof. In many instances the facts and circumstances leading up to the execution of the desired instrument must be relied upon to establish its existence." See also Martin v. Martin, 286 Ky. 408, 150 S.W.2d 696. On the present appeal there are facts and circumstances introduced in evidence by the appellees which could justify a finding of undue influence, such as the fact that the medical testimony indicated the testator would have been easily influenced, that he was suffering from the physical conditions described herein which would render him susceptible to influence, that Wilburn handled his business for him, that Wilburn had custody and control over him, and that Wilburn did physically convey the testator to the attorney's office and did assist in securing witnesses to the will and otherwise assisted the testator in his efforts

to execute the will and the deed. Considering all of these circumstances gathered from the entire record and the fact that the will itself gave the greater part of testator's estate, valued at perhaps $20,000 to $30,000, to one of four grandchildren, all of whom apparently were on good terms with and admired by their grandfather, there is ample basis for a finding by the jury of undue influence.[1]

The appellant also complains that the verdict and judgment are contrary to the law and the evidence as respects the deed of conveyance, it being his contention that the court erred in not submitting the question of the validity of the deed along with the question of the validity of the will and in finally adjudging that the deed also was void. Appellees have in their brief pointed out that at the conclusion of the evidence there was some question as to whether there had been a legal delivery of the deed and that a motion for a directed verdict setting aside the deed for the reason of non-delivery was made but the court did not rule on it, preferring to have the jury first determine the validity of the will. There appears in the record no order to the effect that the deed was void because of the failure of delivery, though the facts themselves conclusively show that there was no delivery.

■ The question of delivery seems immaterial, because the action of the court adjudging the deed invalid must necessarily follow a holding that the will is invalid. Less mental capacity is required for the execution of a will than a deed. Therefore, the will having been set aside the deed also must be set aside. Rounds v. Rounds, 220 Ky. 98, 294 S.W. 785.

■ It is further pointed up by appellees in their brief that the appellant offered no instructions and did not at the

1. See Roland v. Eibeck, Ky., 385 S.W.2d 37 (decided December 11, 1964), a strikingly similar case, in which it was pointed out that "when a contest is pitched on both mental incapacity and undue influence, evidence that tends to show both need not be as convincing as would be essential to prove one or the other alone."

time of the instructions object to those given by the court, so that the failure or the omission of the court to give an instruction on the deed in this case could not be complained of by the appellant or assigned as an error and should not be considered on this appeal. CR 51; Baldwin v. Wiggins, Ky., 289 S.W.2d 729; Mercer v. Commonwealth, Ky., 332 S.W.2d 655.

■ Appellant also urges in his brief that the verdict and judgment are contrary to the law and the evidence in that the form of the verdict which merely reads, "We, the jury, find for the plaintiffs," could only apply to the will. We agree with the appellant that the form of the verdict in a will contest should be whether the jury finds the will to be the true last will and testament of the testator, and perhaps it would be advisable for the courts trying such cases to submit to the jury along with the other applicable instructions an interrogatory for them to determine this fact. But in the absence of any proffered instruction on the part of the appellant, we do not find that the verdict as interpreted by the court below was otherwise improper and that the only reasonable interpretation that could have been placed upon it was that the jury found that the will in question was not properly the true last will and testament of the testator under the instructions given by the court. Finding for the plaintiffs in this case could only be a finding against the will.

■ The third ground for error assigned by appellant is the admission and rejection of evidence. In appellant's brief the statement is made that the court permitted the plaintiffs to testify as to transactions and conversations with the testator. Appellant states further that "some of this testimony was objected to and some was not." In reviewing the transcript of the trial it is obvious that very little of it was objected to and in appellant's brief only two such objections are cited. Moreover, "the rule which excludes a witness from testifying for himself as to a transaction with a deceased person does not apply in the contest of that person's will where the issue is mental incapacity or undue influence." Gay v. Gay, 308 Ky. 539, 215 S.W.2d 92, 94. Though the rule is different with respect to setting aside a deed, Gay v. Gay, 308 Ky. 539, 215 S.W.2d 96, 97, the evidence certainly was admissible in this case as bearing on the will, and, as we have said, if the testator did not have testamentary capacity he could not have been competent to execute the deed.

■ Complaint also is made that the court improperly sustained objections to certain questions propounded to appellant's witnesses as to their opinions of testator's mental capacity. An examination of the questions reveals that they were not in proper form and were not propounded in such a way as to give the witness the opportunity to state whether or not the decedent had sufficient mental capacity to know the natural objects of his bounty, the character and value of his estate, and to make a rational distribution of his estate according to a fixed purpose of his own. Watson's Ex'r. v. Watson, 137 Ky. 25, 121 S.W. 626. But appellant in his brief admits that in other places in the transcript it is shown these witnesses were permitted to testify as to testator's mental condition and that the court's ruling "probably was not prejudicial." We agree that it was not, and that such assignment of error on this appeal is not well taken.

■ The final ground for reversal goes to the correctness of the refusal by the court below to adjudge the costs and attorney fees of the executor's attorneys against the estate. Such costs and fees are proper charges against the estate when incurred in good faith for the purpose of upholding a will. The fact that W. L. DeSpain was either mentally incompetent or that the will was caused to be executed by undue influence of the appellant, or both, indicates that appellant acted in bad faith from the beginning in obtaining the

execution of the will and deed. Under these circumstances coupled with the fact that appellant was the principal beneficiary, and the only one who stood to gain if the will was upheld, the appellant is not entitled to have the fees and costs charged against the estate and the lower court correctly so held. Harrell v. Westover, Ky., 283 S.W.2d 197; Daly v. Moran, 256 Ky. 280, 75 S.W.2d 1041; Slaughter's Ex'r v. Caldwell, 216 Ky. 261, 287 S.W. 720.

The panel respectfully recommends that the judgment of the lower court be affirmed.

The opinion is approved and the judgment is affirmed.